1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   DAVID A. JAKOPIN #209950
2    david.jakopin@pillsburylaw.com
   THEODORE K. BELL #184289
3    tad.bell@pillsburylaw.com
   DANIEL J. RICHERT #232208
4    daniel.richert@pillsburylaw.com
   2475 Hanover Street
5  Palo Alto, CA  94304-1114
   Telephone: (650) 233-4500
6  Facsimile: (650) 233-4545

7  MCDONNELL BOEHNEN HULBERT & BERGHOFF LLP
   BRADLEY J. HULBERT
8    hulbert@mbhb.com
   KURT W. ROHDE
9    rohdek@mbhb.com
   RICHARD A. MACHONKIN
10   machonkin@mbhb.com
   300 South Wacker Drive
11 Chicago, IL  60606-6709
   Telephone: (312) 913-0001
12 Facsimile: (312) 913-0002

13 Attorneys for Defendant
   DIGITAL NETWORKS NORTH AMERICA, INC.

14

15               UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17 _____

18 JENS ERIK SORENSEN, as Trustee of          No. 07 CV 5568
   SORENSEN RESEARCH AND
19 DEVELOPMENT TRUST,                         **DECLARATION OF KURT W.
                                              ROHDE IN SUPPORT OF
20                         Plaintiff,         DEFENDANT'S MOTION TO STAY
                                              THE LITIGATION PENDING THE
21       vs.                                  OUTCOME OF REEXAMINATION
                                              PROCEEDINGS**
22 DIGITAL NETWORKS NORTH
   AMERICA, INC., a Delaware corporation,
23
                          Defendant.
24
25 _____

26

27

28

1       Kurt W. Rohde declares and states as follows:

2       1.      I am an associate at the law firm of McDonnell Boehnen Hulbert & Berghoff

3    LLP, attorneys for Defendant in this case.  Unless otherwise state herein, I have personal

4    knowledge of the facts stated in this declaration and if called upon by a court of law to do

5    so, I could and would testify competently to them.

6       2.      Attached hereto as Exhibit A is a true and correct copy of Bibliographic

7    Data and Transaction History from the PTO's PAIR System regarding the patent in suit.

8       3.      Attached hereto as Exhibit B is a true and correct copy of the Request for *Ex*

9    *Parte* Reexamination Transmittal Form and Pages 1-4 of the Request for *Ex Parte*

10   Reexamination.

11      4.      Attached hereto as Exhibit C is a true and correct copy of the PTO Order

12   Granting Reexamination of U.S. Patent No. 4,935,184.

13      5.      Attached hereto as Exhibit D is a true and correct copy of a PTO publication

14   entitled *Ex Parte* Reexamination Filing Data – June 30, 2006.

15      6.      Attached hereto as Exhibit E is a true and correct copy of the Court's order

16   Granting in Part and Denying in Part Defendants' Motion to Stay in *Jens Erik Sorensen, as*

17   *Trustee of Sorensen Research and Development Trust v. The Black & Decker Corporation,*

18   *et al.*, Case No. 06-cv-1572 (S.D. Cal. August 7, 2006).

19      7.      Attached hereto as Exhibit F is a true and correct copy of the PTO's <u>Manual</u>

20   <u>of Patent Examining Procedure</u> (Eight Edition, Rev. 6, Sept. 2007) § 2250 (III)  (section

21   last revised Aug. 2006).

22      I declare under penalty of perjury that the foregoing is true and correct.

23      Executed this _11th_ day of _December_____, 2007, at Park Ridge, Illinois.

24

25

26                              Kurt W. Rohde

27

28

# EXHIBIT A

| 90/008,775 | STABILIZED INJECTION MOLDING WHEN USING A COMMON MOLD PART WITH SEPARATE COMPLIMENT MOLD PARTS | 11-15-2007::18:19:14 |

## Bibliographic Data

| | | | |
|---|---|---|---|
| Application Number: | 90/008,775 | Customer Number: | - |
| Filing or 371 (c) Date: | 07-30-2007 | Status: | Determination - Reexamination Ordered |
| Application Type: | Re-Examination | Status Date: | 10-11-2007 |
| Examiner Name: | DIAMOND, ALAN D | Location: | ELECTRONIC |
| Group Art Unit: | 3991 | Location Date: | - |
| Confirmation Number: | 9943 | Earliest Publication No: | - |
| Attorney Docket Number: | X32441 | Earliest Publication Date: | - |
| Class / Subclass: | 264/246 | Patent Number: | - |
| First Named Inventor: | 4935184 , , | Issue Date of Patent: | - |

| | |
|---|---|
| Title of Invention: | STABILIZED INJECTION MOLDING WHEN USING A COMMON MOLD PART WITH SEPARATE COMPLIMENT MOLD PARTS |

**Close Window**

Exhibit A p. 1

| 90/008,775 | STABILIZED INJECTION MOLDING WHEN USING A COMMON MOLD PART WITH SEPARATE COMPLIMENT MOLD PARTS | 11-15-2007::17:51:02 |
|---|---|---|

## Transaction History

| Date | Transaction Description |
|---|---|
| 10-11-2007 | Determination -- Reexam Ordered |
| 07-30-2007 | Information Disclosure Statement considered |
| 10-03-2007 | Reexam Litigation Search Conducted |
| 10-16-2007 | Notice of Reexam Published in Official Gazette |
| 09-11-2007 | Case Docketed to Examiner in GAU |
| 07-30-2007 | Information Disclosure Statement (IDS) Filed |
| 08-02-2007 | Notice of assignment of reexamination request |
| 08-02-2007 | Notice of reexamination request filing date |
| 08-01-2007 | Completion of Preprocessing - Released to Assigned GAU |
| 08-02-2007 | Application Is Now Complete |
| 08-01-2007 | Title Report |
| 07-30-2007 | Reexamination requested by third party requester |
| 07-30-2007 | Receipt of Original Ex Parte Reexam Request |

**Close Window**

**Exhibit A p. 2**

# EXHIBIT B



JUL 3 0 2007

*Reexam*

PTO/SB/57 (07-07)
Approved for use through 07/31/2007. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

(Also referred to as FORM PTO-1465)

## REQUEST FOR *EX PARTE* REEXAMINATION TRANSMITTAL FORM

| Address to:<br>**Mail Stop *Ex Parte* Reexam**<br>**Commissioner for Patents**<br>**P. O. Box 1450**<br>**Alexandria, VA 22313-1450** | 66548   U.S. PTO<br><br>07/30/07 | **Attorney Docket No.: X32441**<br><br>**Date: July 30, 2007** | 66548   U.S. PTO<br>**90008775**<br><br>07/30/07 |

1. ☒ This is a request for *ex parte* reexamination pursuant to 37 CFR 1.510 of patent number <u>4,935,184</u>
   issued <u>June 19, 1990</u>. The request is made by:
   ☐ patent owner.       ☒ third party requester.

2. ☒ The name and address of the person requesting reexamination is:
   <u>Arnold Turk, Esq.</u>
   <u>Greenblum & Bernstein, P.L.C.</u>
   <u>1950 Roland Clarke Place, Reston, VA 20191</u>

3. ☒ a. A check in the amount of $ <u>2,520.00</u> is enclosed to cover the reexamination fee, 37 CFR 1.20(c)(1);
   ☒ b. The Director is hereby authorized to charge the fee as set forth in 37 CFR 1.20(c)(1) to
         Deposit Account No. <u>19-0089</u> (submit duplicative copy for fee processing); or
   ☐ c. Payment by credit card. Form PTO-2038 is attached.

4. ☒ Any refund should be made by ☐ check or ☒ credit to Deposit Account No. <u>19-0089</u>.
   37 CFR 1.26(c). If payment is made by credit card, refund must be to credit card account.

5. ☒ A copy of the patent to be reexamined having a double column format on one side of a separate paper is enclosed.
   37 CFR 1.510(b)(4)

6. ☐ CD-ROM or CD-R in duplicate, Computer Program (Appendix) or large table
      ☐ Landscape Table on CD

7. ☐ Nucleotide and/or Amino Acid Sequence Submission
      *If applicable, items a. – c. are required.*
      a. ☐ Computer Readable Form (CRF)
      b. Specification Sequence Listing on:
         i. ☐ CD-ROM (2 copies) or CD-R (2 copies); **or**
         ii. ☐ paper
      c. ☐ Statements verifying identity of above copies

8. ☐ A copy of any disclaimer, certificate of correction or reexamination certificate issued in the patent is included.

9. ☒ Reexamination of claim(s) <u>1, 2, 4, 6-10</u> is requested.

10. ☒ A copy of every patent or printed publication relied upon is submitted herewith including a listing thereof on
    Form PTO-SB/08, PTO-1449, or equivalent.

11. ☒ An English language translation of all necessary and pertinent non-English language patents and/or printed
    publications is included.

08/01/2007 NTWITTY 00000001 90008775
01 FC:1812                                 2520.00 OP

[Page 1 of 2]

This collection of information is required by 37 CFR 1.510. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. § 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA  22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS: SEND TO: **Mail Stop *Ex Parte* Reexam, Commissioner for Patents, P. O. Box 1450, Alexandria, VA  22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

{X32441 00232592.DOC}

PTO/SB/57 (07-07)
Approved for use through 07/31/2007. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

12. ☒ The attached detailed request includes at least the following items:
    a. A statement identifying each substantial new question of patentability based on prior patents and printed publications. 37 CFR 1.510(b)(1)
    b. An identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited art to every claim for which reexamination is requested. 37 CFR 1.510(b)(2)

13. ☐ A proposed amendment is included (only where the patent owner is the requester). 37 CFR 1.510(e)

14. ☒ a. It is certified that a copy of this request (if filed by other than the patent owner) has been served in its entirety on the patent owner as provided in 37 CFR 1.33(c).
    The name and address of the party served and the date of service are:

| James Michael Kaler | Edward W. Callan |
|---|---|
| The Law Offices of James M. Kaler | 3830 Valley Center Drive, No.705, PMB452 |
| 9930 Mesa Rim Road Suite 200, San Diego, CA 92121 | San Diego, CA 92130 |

Date of Service: July 30, 2007 ; or

☐ b. A duplicate copy is enclosed since service on patent owner was not possible.

15. Correspondence Address: Direct all communication about the reexamination to:

☒ The address associated with Customer Number: | 07055
☒ OR

☒ Firm or
Individual Name Greenblum & Bernstein, P.L.C.

Address
    1950 Roland Clarke Place

| City | Reston | State VA | Zip 20191 |
|---|---|---|---|

Country
    United States

| Telephone | (703) 716-1191 | Email aturk@gbpatent.com |
|---|---|---|

16. ☒ The patent is currently the subject of the following concurrent proceeding(s):
    ☐ a. Copending reissue Application No. _____
    ☐ b. Copending reexamination Control No. _____
    ☐ c. Copending Interference No. _____
    ☒ d. Copending litigation styled:
        (1) Jens E. Sorensen v. Black Decker (U.S.) Inc., et al., Civil Action No. 06-cv-1572
        (2) Jens E. Sorensen v. Tecnica USA Corp. and Nordica USA Corp., Civil Action No. 06-cv-1941
        (3) Previous litigation listed in Request

WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

| _____ | July 30, 2007 | |
|---|---|---|
| Authorized Signature | Date | |
| Arnold Turk | 33094 | ☐ For Patent Owner Requester |
| Typed/Printed Name | Registration No. | ☒ For Third Party Requester |

[Page 2 of 2]

{X32441 00232592.DOC}

Exhibit B p. 4

Attorney Docket No. X32441
Attorney Docket No. SOR-BD-184
Request for Reexamination of U.S. Patent No. 4,935,184

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Inventor: | Jens Ole Sorensen | ) |
| | | ) |
| Patent No.: | 4,935,184 | ) |
| | | ) |
| Issue Date: | June 19, 1990 | ) |
| | | ) |
| Filing Date: | July 27, 1989 | ) |
| | | ) |
| Title: | Stabilized Injection Molding | ) |
| | When Using A Common | ) |
| | Mold Part With Separate | ) |
| | Complimentary Mold Parts | ) |

**Mail Stop *Ex Parte* Reexam**
Central Reexamination Unit
Commissioner for Patents
United States Patent & Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

## REQUEST FOR *EX PARTE* REEXAMINATION
### PURSUANT TO 35 U.S.C. § 302 AND 37 § C.F.R. 1.510

Pursuant to 35 U.S.C. § 302 and 37 C.F.R. § 1.510, the Third Party Requester hereby requests that reexamination of the above-identified patent be ordered by the U.S. Patent & Trademark Office.

## I.    CLAIMS FOR REEXAMINATION

Reexamination of claims 1, 2, 4 and 6-10 of U.S. Patent No. 4,935,184 ("the '184 patent") is requested and believed to be in order. The '184 patent is not expired and is still enforceable. A copy of the '184 patent is attached hereto as Appendix A as required by 37 C.F.R. § 1.510(b)(4).

**Exhibit B p. 5**

Attorney Docket No. SOR-BD-184
Request for Reexamination of U.S. Patent No. 4,935,184

## II.    SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY

Substantial new questions of patentability are raised based upon the following patents and printed publications:

| Patents and Published Patent Applications | | | | |
|---|---|---|---|---|
| Reference Number | Country | Applicant or Assignee | Issue Date | Statutory Basis |
| 2,863,241 | U.S. | Gits | 12/09/58 | 102(b) |
| 3,178,497 | U.S. | Moscicki | 04/13/65 | 102(b), 103(a) |
| 4,422,995 | U.S. | Schad | 12/27/83 | 103(a) |
| 4,440,820 | U.S. | Shiho et al. | 04/03/84 | 102(b), 103(a) |
| 1 850 999 | Germany (DE) | Echterholter | 05/03/62 (published) | 102(b), 103(a) |
| 2 004 494 | U.K. (GB) | SEIMA | 04/04/79 (published) | 102(b), 103(a) |
| 60-119520 | Japan (JP) | Toyota Motor | 08/13/85 (published) | 102(b), 103(a) |
| Printed Publications | | | | |
| Source | Title | | Publication Date | Statutory Basis |
| Modern Plastics | New Vigor For Two-Shot Molding With Automation . . . Versatility . . . Ingenuity | | 05/68 | 102(b), 103(a) |

A copy of each reference that has a bearing on the patentability of the claims of the '184 patent (including English translations thereof as appropriate) is enclosed in Appendix B herewith in accordance with 37 C.F.R. § 1.510(b)(3). The cover page of Appendix B lists the identified references in a PTO/SB/08 form.

With the exception of the Schad reference, none of the other identified references were cited by either the applicant or the Examiner during prosecution of the application that issued as the '184 patent. These newly cited references are more relevant than the art cited and considered during prosecution of the '184 patent.

2

**Exhibit B p. 6**

As shown herein, the identified references anticipate or render obvious one or more claims of the '184 patent, alone or in combination with other references or the knowledge of one of ordinary skill in the art. Because none of the identified references were previously considered in the present context, and because the identified references teach or render obvious the claimed invention, a substantial new question of patentability is raised and reexamination should be granted with respect to each of claims 1, 2, 4 and 6-10 of the '184 patent. For ease of reference, a table listing each substantial new question of patentability that exists in view of the identified references appears at the beginning of Appendix C.

## III.  CONCURRENT LITIGATION INVOLVING THE '184 PATENT

The '184 patent is currently involved in litigation. On August 7, 2006, Jens E. Sorensen as trustee of the Sorensen Research and Development Trust (the purported owner of the '184 patent) filed a Complaint asserting infringement of the '184 patent against The Black & Decker Corporation. The Complaint has since been amended to include allegations of patent infringement against Black & Decker Inc., Black & Decker (U.S.) Inc., Porter-Cable Corporation, Vector Products, Inc., Phillips Plastics Corporation, Hi-Tech Plastics, Inc., and B&D Holdings, LLC. The case is pending in the United States District Court for the Southern District of California, and is docketed as Civil Action No. 06-cv-1572. The '184 patent is also presently involved in a second matter pending in the same district against Tecnica USA Corporation and Nordica USA Corporation. That case is docketed as Civil Action No. 06-cv-1941.

Additionally, the '184 patent has previously been the subject of litigation in the following matters:

3

Attorney Docket No. SOR-BD-184
Request for Reexamination of U.S. Patent No. 4,935,184

- *Jens E. Sorensen as trustee of the Sorensen Research and Development Trust v. Premier Automotive Group, Ford Motor Company, and Jaguar Cars, Ltd.*, Civil Action No. 03-cv-1107, United States District Court for the Northern District of California

- *Jens E. Sorensen as trustee of the Sorensen Research and Development Trust and Jens Ole Sorensen v. DaimlerChrysler AG and Mercedes-Benz USA, LLC*, Civil Action No. 02-cv-4752, United States District Court for the Northern District of California (subsequently transferred to the United States District Court for the District of New Jersey and docketed as Civil Action No. 03-cv-1763)

- *In the Matter of Certain Automobile Tail Light Lenses and Products Incorporating Same, Jens E. Sorensen as trustee of the Sorensen Research and Development Trust and Jens Ole Sorensen v. DaimlerChrysler AG and Mercedes-Benz USA, LLC*, Investigation No. 337-TA-502, United States International Trade Commission

- *Lowe's Companies, Inc. and Lowe's Home Centers, Inc. v. Sorensen Research & Development Trust*, Civil Action No. 05-cv-234, United States District Court for the Western District of North Carolina

- *Digital Innovations LLC v. Sorensen Research & Development Trust*, Civil Action No. 05-cv-6428, United States District Court for the Northern District of Illinois

- *Nordica USA Corporation v. Jens Ole Sorensen, Jens Erik Sorensen, and Sorensen Research and Development Trust*, Civil Action No. 06-cv-91, United States District Court for the District of New Hampshire

- *Husqvarna Outdoor Products v. Sorensen Research & Development Trust*, Civil Action No. 06-cv-160, United States District Court for the Southern District of Georgia

- *Head USA, Inc. v. Jens E. Sorensen as trustee of the Sorensen Research and Development Trust*, Civil Action No. 06-cv-983, United States District Court for the District of Connecticut

- *Big Lots Stores, Inc. v. Sorensen Research & Development Trust*, Civil Action No. 06-cv-1089, United States District Court for the Southern District of Ohio

- *Jens E. Sorensen as trustee of the Sorensen Research and Development Trust v. Head USA, Inc.*, Civil Action No. 06-cv-1434, United States District Court for the Southern District of California

These cases are all believed to have been resolved by way of settlement and/or dismissal.

4

# EXHIBIT C

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,775 | 07/30/2007 | 4935184 | X32441 | 9943 |

| 22653          7590          10/11/2007 |
|---|
| EDWARD W CALLAN |
| NO. 705 PMB 452 |
| 3830 VALLEY CENTRE DRIVE |
| SAN DIEGO, CA  92130 |

| EXAMINER |
|---|
|  |

| ART UNIT | PAPER NUMBER |
|---|---|
|  |  |

DATE MAILED: 10/11/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

Exhibit C p. 9

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

10/11/07

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

Arnold Turk, Esq.

Greenblum & Bernstein P. L. C.

1950 Roland Clarke Place

Reston VA    20191

## *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO  90/008775
PATENT NO.   4,935,184
ART UNIT 3992

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

Exhibit C p. 10

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. 90/008,775 | Patent Under Reexamination 4935184 | |
|---|---|---|---|
| | Examiner Alan Diamond | Art Unit 3991 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>30 July 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,    b)☒ PTO/SB/08,    c)☐ Other: _____

1. ☒    The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐    The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)).  **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

    a) ☐  by Treasury check or,

    b) ☐  by credit to Deposit Account No. _____,  or

    c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

Alan  Diamond
Primary Examiner
Art Unit: 3991

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)                    Office Action In *Ex Parte* Reexamination                    Part of Paper No. 20071003

Exhibit C p. 11

Application/Control Number: 90/008,775                                    Page 2
Art Unit: 3991

### *Decision on Reexamination Request*

1.      A substantial new question of patentability affecting claims 1, 2, 4, and 6-10 of

United States Patent Number 4,935,184 to Sorensen, is raised by the request for *ex*

*parte* reexamination.  The request for reexamination is Third Party requested.

2.      Since requestor did not request reexamination of claims 3 and 5 and did not

assert the existence of a substantial new question of patentability (SNQ) for such claims

(see 35 U.S.C. § 302); see also 37 CFR 1.510b and 1.515), such claims will not be

reexamined.  This matter was squarely addressed in *Sony Computer Entertainment*

*America Inc., et al v. Jon W. Dudas*, Civil Action No. 1:05CV1447 (E.D.Va. May 22,

2006), Slip Copy, 2006 WL 1472462.  The District Court upheld the Office's discretion to

not reexamine claims in a reexamination proceeding other than those claims for which

reexamination had specifically been requested.  The Court stated:

> "To be sure, a party may seek, and the PTO may grant, ...review of each and every
> claim of a patent. Moreover, while the PTO in its discretion may review claims for
> which ... review was not requested, nothing in the statute compels it to do so. To
> ensure that the PTO considers a claim for ... review, ...requires that the party
> seeking reexamination demonstrate why the PTO should reexamine each and every
> claim for which it seeks review. Here, it is undisputed that **Sony** did not seek review
> of every claim under the '213 and '333 patents.  Accordingly, **Sony** cannot now
> claim that the PTO wrongly failed to reexamine claims for which **Sony** never
> requested review, and its argument that AIPA compels a contrary result is
> unpersuasive."

### *Extension of Time*

3.      Extensions of time under 37 CFR 1.136(a) will not be permitted in these

proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and

not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that

Exhibit C p. 12

Application/Control Number: 90/008,775                                    Page 3
Art Unit: 3991

*ex parte* reexamination proceedings "will be conducted with special dispatch" (37

CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided

for in 37 CFR 1.550(c).


### *Substantial New Question of Patentability (SNQ)*

4.     The presence or absence of a "substantial new question of patentability"

determines whether or not reexamination is ordered.

For a "substantial new question of patentability" to be present, it is only

necessary that :

A) the prior art patents and/or printed publications raise a substantial new

question of patentability regarding at least one claim, i.e., the teaching of the (prior art)

patents and printed publications is such that a reasonable examiner would consider the

teaching to be important in deciding whether or not the claim is patentable; and

B) the same question of patentability as to the claim has not been decided by the

Office in a previous examination of the patent or in a final holding of invalidity by the

Federal Courts in a decision on the merits involving the claim.

A SNQ may be based solely on old art where the old art is being

presented/viewed in a new light, or in a different way, as compared with its use in the

earlier concluded examination(s), in view of a material new argument or interpretation in

the request.  (MPEP 2242).

Exhibit C p. 13

### *Request*

5.    **The request indicates the Requestor considers that Moscicki (U.S. Patent 3,178,497) raises a substantial new question of patentability with respect to claims 1, 4, 6-8 and 10 of Sorensen.**

It is agreed that consideration of Moscicki raises a substantial new question of patentability as to claims 1, 4, 6-8 and 10 of Sorensen.  Page 28, line 14 though page 32, seventh line from the bottom; page 56 at the start of section 8 through page 58, line 5; page 83, line 13 through page 86, line 9; page 86, line 22 through page 87, line 22; page 94, lines 1-19; page 98, line 6 through page 99, line 2; and page 107, line 18 through page 108, line 11, of the request for reexamination are hereby incorporated by reference for their explanation of the teaching provided in Moscicki that was not present in the prosecution of the application which became the Sorensen patent.  There is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claims 1, 4, 6-8 and 10 of Sorensen were patentable.  Accordingly, Moscicki raises a substantial new question of patentability as to claims 1, 4, 6-8 and 10, which question has not been decided in a previous examination of the Sorensen patent.

6.    **The request indicates the Requestor considers that Seima (GB 2004494 A) raises a substantial new question of patentability with respect to claims 1, 2 and 6-10 of Sorensen.**

Exhibit C p. 14

Application/Control Number: 90/008,775                                        Page 5
Art Unit: 3991

It is agreed that consideration of Seima raises a substantial new question of patentability as to claims 1, 2 and 6-10 of Sorensen.  Page 32, sixth line from the bottom, through the end of page 36; page 60, fifth line from the bottom, through page 62, line 3; page 80, line 10 through page 83, line 12; page 88, line 13 through page 89, line 15; page 95, line 13 through page 96, line 9; page 99, line 15 through page 100, line 11; page 104, line 1 through page 107, line 4; and page 109, lines 1-20, of the request for reexamination are hereby incorporated by reference for their explanation of the teaching provided in Seima that was not present in the prosecution of the application which became the Sorensen patent.  There is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claims 1, 2 and 6-10 of Sorensen were patentable.  Accordingly, Seima raises a substantial new question of patentability as to claims 1, 2 and 6-10, which question has not been decided in a previous examination of the Sorensen patent.

7.     **The request indicates the Requestor considers that Gits (U.S. Patent 2,863,241) raises a substantial new question of patentability with respect to claim 1 of Sorensen.**

It is agreed that consideration of Gits raises a substantial new question of patentability as to claim 1 of Sorensen.  Page 37, line 1 through the end of section 3 on page 40, of the request for reexamination are hereby incorporated by reference for their explanation of the teaching provided in Gits that was not present in the prosecution of the application which became the Sorensen patent.  There is a substantial likelihood

Exhibit C p. 15

Application/Control Number: 90/008,775                                Page 6
Art Unit: 3991

that a reasonable examiner would consider this teaching important in deciding whether

or not claim 1 of Sorensen was patentable.  Accordingly, Gits raises a substantial new

question of patentability as to claim 1, which question has not been decided in a

previous examination of the Sorensen patent.


8.       **The request indicates the Requestor considers that Shiho** *et al* **(U.S. Patent**

**4,440,820, hereinafter "Shiho") raises a substantial new question of patentability**

**with respect to claims 1, 6-8 and 10 of Sorensen.**

         It is agreed that consideration of Shiho raises a substantial new question of

patentability as to claims 1, 6-8 and 10 of Sorensen.  The beginning of section 4 on

page 40 through the end of section 4 on page 44; page 90, lines 4-20; page 96, line 23

through page 97, line  6; page 101, lines 1-11; and page 110, lines 14-23, of the request

for reexamination are hereby incorporated by reference for their explanation of the

teaching provided in Shiho that was not present in the prosecution of the application

which became the Sorensen patent.  There is a substantial likelihood that a reasonable

examiner would consider this teaching important in deciding whether or not claims 1, 6-

8 and 10 of Sorensen were patentable.  Accordingly, Shiho raises a substantial new

question of patentability as to claims 1, 6-8 and 10, which question has not been

decided in a previous examination of the Sorensen patent.

Exhibit C p. 16

Application/Control Number: 90/008,775                                    Page 7
Art Unit: 3991

9.      The request indicates the Requestor considers that JP 60-119520 U to

Toyota Motor (hereinafter "Toyota") raises a substantial new question of

patentability with respect to claim 1 of Sorensen.

        It is agreed that consideration of Toyota raises a substantial new question of

patentability as to claim 1 of Sorensen. The beginning of section 5 on page 44 through

the end of section 5 on page 48; and page 70, line 1 through page 71, line 8, of the

request for reexamination are hereby incorporated by reference for their explanation of

the teaching provided in Toyota that was not present in the prosecution of the

application which became the Sorensen patent. There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claim 1 of Sorensen was patentable. Accordingly, Toyota raises a substantial new

question of patentability as to claim 1, which question has not been decided in a

previous examination of the Sorensen patent.


10.     The request indicates the Requestor considers that German Published

Patent Application No. 1850999 to Echterholter raises a substantial new question

of patentability with respect to claim 1 of Sorensen.

        It is agreed that consideration of Echterholter raises a substantial new question

of patentability as to claim 1 of Sorensen. The beginning of section 6 on page 48

through page 53, line 6; and page 73, line 10 through page 74, line 17, of the request

for reexamination are hereby incorporated by reference for their explanation of the

teaching provided in Echterholter that was not present in the prosecution of the

Exhibit C p. 17

application which became the Sorensen patent. There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claim 1 of Sorensen was patentable. Accordingly, Echterholter raises a substantial new

question of patentability as to claim 1, which question has not been decided in a

previous examination of the Sorensen patent.

11.    **The request indicates the Requestor considers that Wright, "New vigor for**

**two-shot molding automation... versatility... ingenuity," Modern Plastics, May**

**1986, pp. 79-83, (hereinafter "Modern Plastics") raises a substantial new question**

**of patentability with respect to claims 1, 6 and 8 of Sorensen.**

It is agreed that consideration of Modern Plastics raises a substantial new

question of patentability as to claims 1, 6 and 8 of Sorensen. Page 53, line 7 through

the end of section 7 on page 56; page 77, line 1 through page 78, line 8; page 92, line 9

through page 93, line 12; and page 102, line 16 through page 103, line 11, of the

request for reexamination are hereby incorporated by reference for their explanation of

the teaching provided in Modern Plastics that was not present in the prosecution of the

application which became the Sorensen patent. There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claims 1, 6 and 8 of Sorensen were patentable. Accordingly, Modern Plastics raises a

substantial new question of patentability as to claims 1, 6 and 8, which question has not

been decided in a previous examination of the Sorensen patent.

Exhibit C p. 18

Application/Control Number: 90/008,775                                    Page 9
Art Unit: 3991

12.     The request indicates the Requestor considers that Moscicki in view of
Echterholter and further in view of Modern Plastics raises a substantial new
question of patentability with respect to claims 1, 4, 6-8 and 10 of Sorensen.

        It is agreed that consideration of Moscicki in view of Echterholter and further in
view of Modern Plastics raises a substantial new question of patentability as to claims 1,
4, 6-8 and 10 of Sorensen. Page 58, line 6 through the end of section 9 on page 60;
page 86, lines 10-21; page 88, lines 1-12; page 95, lines 1-12; page 99, lines 3-14; and
page 108, lines 12-23, of the request for reexamination are hereby incorporated by
reference for their explanation of the teaching provided in Moscicki, Echterholter and
Modern Plastics that was not present in the prosecution of the application which
became the Sorensen patent. There is a substantial likelihood that a reasonable
examiner would consider this teaching important in deciding whether or not claims 1, 4,
6-8 and 10 of Sorensen were patentable. Accordingly, Moscicki in view of Echterholter
and further in view of Modern Plastics raises a substantial new question of patentability
as to claims 1, 4, 6-8 and 10, which question has not been decided in a previous
examination of the Sorensen patent.


13.     The request indicates the Requestor considers that Seima in view of
Echterholter and further in view of Modern Plastics raises a substantial new
question of patentability with respect to claims 1 and 6-10 of Sorensen.

        It is agreed that consideration of Seima in view of Echterholter and further in view
of Modern Plastics raises a substantial new question of patentability as to claims 1 and

Exhibit C p. 19

6-10 of Sorensen. Page 62, line 4 through page 64, line 3; page 89, line 16 through

page 90, line 3; page 96, lines 10-22; page 100, lines 12-24; page 107, lines 5-17; and

page 110, lines 1-13, of the request for reexamination are hereby incorporated by

reference for their explanation of the teaching provided in Seima, Echterholter and

Modern Plastics that was not present in the prosecution of the application which

became the Sorensen patent. There is a substantial likelihood that a reasonable

examiner would consider this teaching important in deciding whether or not claims 1

and 6-10 of Sorensen were patentable. Accordingly, Seima in view of Echterholter and

further in view of Modern Plastics raises a substantial new question of patentability as to

claims 1 and 6-10, which question has not been decided in a previous examination of

the Sorensen patent.

14.    **At page 64, line 4 through page 67, line 18; page 90, line 21 through page**

**91, line 13; page 97, lines 7-16; and page 101, lines 12-22, the request indicates**

**the Requestor considers that Schad (U.S. Patent 4,422,995) raises a substantial**

**new question of patentability with respect to claims 1 and 6-8 of Sorensen.**

Schad **does** not raise a substantial new question of patentability with respect to

claims 1 and 6-8 of Sorensen. In the prosecution of application Serial No. 07/386,012,

which matured into the Sorensen patent, Schad was used to reject all the claims (1-10)

under 35 USC 103(a). The rejection over Schad was overcome and the Sorensen

patent was allowed after applicant amended steps (h) and (i) of claim 1 so as to recite

the injection of first/second plastic material until it reaches the portion of the first/second

Exhibit C p. 20

Application/Control Number: 90/008,775                                    Page 11
Art Unit: 3991

mold cavity that defines the rim of the product.  Third party requestor even admits at

page 66, lines 16-18, of the request that "Schad does not specifically disclose a first

injection material which 'reaches the portion of the mold cavity that defines the rim of

the product.'"  Third party requestor cites *KSR int'l Co. v. Teleflex Inc.* and design

choice for the obviousness of modifying Schad so that a first injection material reaches

the portion of the mold cavity that defines the rim of the product (Request, pages 66-

67).  Third party requestor notes that "design choice" with respect to product shape was

considered by the Examiner in the rejection over Schad that was mailed 10/11/1988

during prosecution of the 07/386,012 application (see page 67 of the Request).

Consideration of Shad in view of *KSR int'l Co. v. Teleflex Inc.* or  "design choice" does

not provide any new teaching with respect to Schad as compared with its use in the

prosecution of the Sorensen patent.  Accordingly, Schad is not being viewed in a new

light compared with its use in the prosecution of the Sorensen patent, and thus, does

not raise a substantial new question of patentability with respect to claims 1 and 6-8 of

Sorensen.


15.    **The request indicates the Requestor considers that Schad in view of**
**Moscicki and further in view of Seima and Shiho raises a substantial new**
**question of patentability with respect to claims 1 and 6-8 of Sorensen.**

It is agreed that consideration of Schad in view of Moscicki and further in view of

Seima and Shiho raises a substantial new question of patentability as to claims 1 and 6-

8 of Sorensen.  Page 67, lines 19 through the last line on page 69; page 91, line 14

Exhibit C p. 21

Application/Control Number: 90/008,775                    Page 12
Art Unit: 3991

through page 92, line 8; page 97, line 17 through page 98, line 5; and page 102, lines 1-

15, of the request for reexamination are hereby incorporated by reference for their

explanation of the teaching provided in Schad, Moscicki, Seima and Shiho that was not

present in the prosecution of the application which became the Sorensen patent. There

is a substantial likelihood that a reasonable examiner would consider this teaching

important in deciding whether or not claims 1 and 6-8 of Sorensen were patentable.

Accordingly, Schad in view of Moscicki and further in view of Seima and Shiho raises a

substantial new question of patentability as to claims 1 and 6-8, which question has not

been decided in a previous examination of the Sorensen patent.


16.     The request indicates the Requestor considers that Toyota in view of
Moscicki and further in view of Seima and Shiho raises a substantial new
question of patentability with respect to claim 1 of Sorensen.

        It is agreed that consideration of Toyota in view of Moscicki and further in view of

Seima and Shiho raises a substantial new question of patentability as to claim 1 of

Sorensen. Page 71, line 9 through page 73, line 9, of the request for reexamination are

hereby incorporated by reference for their explanation of the teaching provided in

Toyota, Moscicki, Seima and Shiho that was not present in the prosecution of the

application which became the Sorensen patent. There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claim 1 Sorensen was patentable. Accordingly, Toyota in view of Moscicki and further

in view of Seima and Shiho raises a substantial new question of patentability as to claim

Exhibit C p. 22

Application/Control Number: 90/008,775                                    Page 13

Art Unit: 3991

1, which question has not been decided in a previous examination of the Sorensen

patent.

17.    **The request indicates the Requestor considers that Echterholter in view of**
**Moscicki and further in view of Seima and Shiho raises a substantial new**
**question of patentability with respect to claim 1 of Sorensen.**

It is agreed that consideration of Echterholter in view of Moscicki and further in

view of Seima and Shiho raises a substantial new question of patentability as to claim 1

of Sorensen.  Page 74, line 18 through the last line on page 76, of the request for

reexamination are hereby incorporated by reference for their explanation of the teaching

provided in Echterholter, Moscicki, Seima and Shiho that was not present in the

prosecution of the application which became the Sorensen patent.  There is a

substantial likelihood that a reasonable examiner would consider this teaching important

in deciding whether or not claim 1 Sorensen was patentable.  Accordingly, Echterholter

in view of Moscicki and further in view of Seima and Shiho raises a substantial new

question of patentability as to claim 1, which question has not been decided in a

previous examination of the Sorensen patent.

18.    **The request indicates the Requestor considers that Modern Plastics in view**
**of Moscicki and further in view of Seima and Shiho raises a substantial new**
**question of patentability with respect to claims 1, 6 and 8 of Sorensen.**

Exhibit C p. 23

Application/Control Number: 90/008,775                                        Page 14
Art Unit: 3991

It is agreed that consideration of Modern Plastics in view of Moscicki and further in view of Seima and Shiho raises a substantial new question of patentability as to claims 1, 6 and 8 of Sorensen. Page 78, line 9 through page 80, line 9; page 93, lines 13-25; and page 103, lines 12-24, of the request for reexamination are hereby incorporated by reference for their explanation of the teaching provided in Modern Plastics, Moscicki, Seima and Shiho that was not present in the prosecution of the application which became the Sorensen patent. There is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claims 1, 6 and 8 of Sorensen were patentable. Accordingly, Modern Plastics in view of Moscicki and further in view of Seima and Shiho raises a substantial new question of patentability as to claims 1, 6 and 8, which question has not been decided in a previous examination of the Sorensen patent.

### Duty to Disclose

19.    The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 4,935,184 throughout the course of this reexamination proceeding. The third party requestor is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Exhibit C p. 24

Application/Control Number: 90/008,775                          Page 15
Art Unit: 3991

### *Correspondence*

14.     Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Alan Diamond whose telephone number is (571) 272-

1338.  The examiner can normally be reached on Monday through Friday from 5:30

a.m. to 2:00 p.m.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Deborah Jones can be reached on (571) 272-1535.

        Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).

### *Notice Re Patent Owner's Correspondence Address*

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte*
reexamination or an *inter partes* reexamination is designated as the correspondence
address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte
> and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not
having the same correspondence address as that of the patent is, by way of this**

Exhibit C p. 25

Application/Control Number: 90/008,775                    Page 16
Art Unit: 3991

**revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of
the effective date.**

This change is effective for any reexamination proceeding which is pending before the
Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any
reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct
communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for
the present proceeding is different from the correspondence address of the patent, it is
strongly encouraged that the patent owner affirmatively file a Notification of Change of
Correspondence Address in the reexamination proceeding and/or the patent (depending
on which address patent owner desires), to conform the address of the proceeding with
that of the patent and to clarify the record as to which address should be used for
correspondence.

Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice          (571) 272-7703
Central Reexam Unit (CRU)                     (571) 272-7705
Reexamination Facsimile Transmission No.      (571) 273-9900

Please mail any communications to:
        Attn: Mail Stop "Ex Parte Reexam"
        Central Reexamination Unit
        Commissioner for Patents
        P. O. Box 1450
        Alexandria VA   22313-1450

Please FAX any communications to:
        (571) 273-9900
        Central Reexamination Unit

Exhibit C p. 26

Application/Control Number: 90/008,775                                                    Page 17
Art Unit: 3991

Please hand-deliver any communications to:
       Customer Service Window
       Attn:  Central Reexamination Unit
       Randolph Building, Lobby Level
       401 Dulany Street
       Alexandria, VA  22314

Signed:

Alan Diamond                                              /Jerry D. Johnson/
Primary Examiner                                          Primary Examiner
Central Reexamination Unit                                Art Unit 3991
Art Unit 3991
(571) 272-1338

                                                         STEPHEN J. STEIN
                                                         CRU EXAMINER - AU 3991

Exhibit C p. 27

# EXHIBIT D

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.go

*Ex Parte* Reexamination Filing Data - June 30, 2006

1. Total requests filed since start of ex parte reexam on 07/01/81 .....................................8084

    a. By patent owner                                 3313    41%
    b. By other member of public              4606    57%
    c. By order of Commissioner               165     2%

2. Number of filings by discipline

    a. Chemical Operation                        2496    31%
    b. Electrical Operation                      2608    32%
    c. Mechanical Operation                   2980    37%

3. Annual Ex Parte Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 1981 | 78 (3 mos.) | 1989 | 243 | 1997 | 376 | 2005 | 524 |
| 1982 | 187 | 1990 | 297 | 1998 | 350 | 2006 | 340 |
| 1983 | 186 | 1991 | 307 | 1999 | 385 | | |
| 1984 | 189 | 1992 | 392 | 2000 | 318 | | |
| 1985 | 230 | 1993 | 359 | 2001 | 296 | | |
| 1986 | 232 | 1994 | 379 | 2002 | 272 | | |
| 1987 | 240 | 1995 | 392 | 2003 | 392 | | |
| 1988 | 268 | 1996 | 418 | 2004 | 441 | | |

4. Number known to be in litigation.............................................................1895   23%

5. Determinations on requests.........................................................................7852

    a. No. granted ................................................................ 7160 ..................91%

        (1) By examiner                      7054
        (2) By Director (on petition)        106

    b. No. denied ................................................................ 692 ....................9%

        (1) By examiner                      657
        (2) Order vacated                35

**Exhibit D p. 28**

6.  Total examiner denials (includes denials reversed by Director)......................................763

    a.  Patent owner requester                430        56%
    b.  Third party requester                  333        44%

7.  Overall reexamination pendency  (Filing date to certificate issue date)

    a.  Average pendency                    22.8  (mos.)
    b.  Median pendency                      17.6  (mos.)

8.  Reexam certificate claim analysis:

| | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|
| a.  All claims confirmed | 23% | 29% | 13% | 26% |
| b.  All claims cancelled | 7% | 12% | 19% | 10% |
| c.  Claims changes | 70% | 59% | 68% | 64% |

9.  Total ex parte reexamination certificates issued (1981 - present)....................................5433

    a.  Certificates with all claims confirmed        1410    26%
    b.  Certificates with all claims canceled         554    10%
    c.  Certificates with claims changes           3469    64%

10. Reexam claim analysis - requester is patent owner or 3rd party; or Comm'r initiated.

    a.  Certificates _ PATENT OWNER REQUESTER......................................................2360

        (1)  All claims confirmed        543    23%
        (2)  All claims canceled         174     7%
        (3)  Claim changes             1643    70%

    b.  Certificates _ 3rd PARTY REQUESTER .............................................................2934

        (1)  All claims confirmed        849    29%
        (2)  All claims canceled         353    12%
        (3)  Claim changes             1732    59%

    c.  Certificates _ COMM'R INITIATED REEXAM .......................................................139

        (1)  All claims confirmed         18    13%
        (2)  All claims canceled         27    19%
        (3)  Claim changes             94    68%

# EXHIBIT E

1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9            SOUTHERN DISTRICT OF CALIFORNIA
10
11   JENS ERIK SORENSEN, as Trustee of          CASE NO. 06cv1572 BTM (CAB)
     SORENSEN RESEARCH AND
12   DEVELOPMENT TRUST,                         **ORDER:**
13                          Plaintiff,          **(1) DENYING PLAINTIFF'S MOTION
                                                FOR RECONSIDERATION OF
14                                              DENIAL OF OBJECTIONS TO
                                                MAGISTRATE JUDGE'S ORDER OF
15                                              APRIL 9, 2007 AS MOOT [Doc.
           vs.                                  #163];
16
                                                **(2) GRANTING DEFENDANTS'
17                                              MOTION FOR RECONSIDERATION
                                                OF THE COURT'S JUNE 20, 2007
18                                              ORDER RE BIFURCATION [Doc.
                                                #171];
19
20   THE BLACK AND DECKER                       **(3) GRANTING IN PART AND
     CORPORATION, et al.                        DENYING IN PART DEFENDANTS'
21                                              MOTION TO STAY [Doc. #178];
                            Defendants.
22                                              **and**
23                                              **(4) DENYING PLAINTIFF'S MOTION
                                                FOR PARTIAL SUMMARY
24                                              JUDGMENT AS PREMATURE [Doc.
                                                #204]**
25   **I.    Motion for Reconsideration of Denial of Objections to Magistrate Judge's Order**

26         On April 9, 2007, Magistrate Judge Bencivengo issued an order in which she granted

27   in part and denied in part Plaintiff's motion to compel further responses to discovery.  In

28   accordance with 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), Plaintiff filed an

                                          1

1   objection to that ruling, arguing that it was both clearly erroneous and contrary to law.  In an

2   order entered June 14, 2007, the Court overruled Plaintiff's objection without prejudice.  The

3   Court found that the Magistrate Judge's determinations regarding the Black & Decker

4   Defendants' waiver of the attorney-client privilege, and the applicability of Patent Local Rule

5   2.5(d), were neither clearly erroneous nor contrary to law, on the record before the Court.

6   However, the Court was unable to determine at that time whether, and to what extent, the

7   Black & Decker Defendants ("B&D") intended to rely upon the death of Dennis Dearing to

8   provide the requisite showing of prejudice in support of any laches and/or equitable estoppel

9   defenses.  Therefore, Plaintiff was granted leave to serve an interrogatory upon B&D, which

10  stated: "Set forth, in detail, all prejudice to Defendants that resulted from the death of Dennis

11  Dearing in regard to this case."  To the extent Plaintiff believed that B&D's response to the

12  interrogatory indicated that this Court's determination regarding waiver of the attorney-client

13  privilege was in error, it was invited to move for reconsideration of the decision at that time.

14       On July 11, 2007, B&D responded to Plaintiff's interrogatory setting forth the prejudice

15  that resulted from the death of its former in-house counsel Dennis Dearing.  The prejudice

16  identified included the inability to have Mr. Dearing testify regarding his communications in

17  the mid-1990s pertaining to Mr. Jens Ole Sorensen's claims of infringement of the '184

18  Patent.  These communications included discussions directly with Mr. Sorensen and his

19  representatives, as well as with John Schiech, Black & Decker's business manager

20  responsible for making all decisions concerning the matter.  B&D also indicated that it was

21  prejudiced because it could not present Mr. Dearing as a witness to defend against Plaintiff's

22  charge of willful infringement.

23       On July 12, 2007, Plaintiff filed the present motion to reconsider this Court's previous

24  ruling on the basis of the new evidence presented in B&D's interrogatory response.  The

25  motion was calendared for hearing, without oral argument, on August 10, 2007.  However,

26  while the motion was pending, Magistrate Judge Bencivengo reconsidered her earlier ruling

27  in light of B&D's interrogatory response.  On August 3, 2007, Judge Bencivengo issued her

28  "Order Following Discovery Conference on July 26, 2007" in which she ruled:

2

Exhibit E p. 31

> Since the defendant is affirmatively relying upon the death of Mr. Dearing to support its defense of laches, the plaintiff is entitled to review Mr. Dearing's files that still exist and reflect his personal thoughts and impressions, so plaintiff may respond to defendant's claim of lost evidence. Defendant was therefore ordered to produce any withheld documents reflecting Mr. Dearing's work product on this matter.

[Doc. #177 at ¶ 8.] Judge Bencivengo stayed production of Mr. Dearing's work product for 30 days in order to give B&D an opportunity to appeal the order. B&D has just taken that opportunity and filed a motion for reconsideration on September 4, 2007 [Doc. #240]. B&D's motion is calendared for hearing by this Court on November 2, 2007.

In light of Judge Bencivengo's more recent order requiring production of Mr. Dearing's privileged documents, and the now-pending motion for reconsideration of that order, the Court finds moot Plaintiff's motion for reconsideration of its previous order overruling Plaintiff's objection to Judge Bencivengo's April 9, 2007 order. The Court finds that this entire issue will be addressed, upon a complete and updated record that includes Judge Bencivengo's August 3, 2007 order, in the Court's forthcoming decision on B&D's pending motion for reconsideration. Accordingly, Plaintiff's motion is **DENIED** without prejudice as moot.

**II.    Motion for Reconsideration of Bifurcation**

On June 13, 2007, the Court held a hearing on B&D's motion for summary judgment of laches. The Court denied B&D's motion at that hearing and discussion then ensued over the possibility of setting an expedited bench trial on B&D's equitable defenses of laches and estoppel. At B&D's urging, the Court and the parties agreed to schedule this bench trial beginning on December 17, 2007. In a June 20, 2007 written order confirming the Court's decision from the June 13 hearing, the Court explained that the trial of equitable defenses could be bifurcated from the rest of the trial proceedings relating to infringement. [Doc. #147 at 2-3.] Citing the Ninth Circuit case of Danjaq LLC v. Sony Corp., 263 F.3d 942 (9th Cir. 2001), the Court explained that, in deciding these equitable defenses, it would need to determine whether there has been any showing of willful infringement on the part of

**Exhibit E p. 32**

1    Defendants that would act as a "counterdefense" to laches. The Court invited any party to

2    make a motion for reconsideration of the decision to bifurcate the equitable portion of the trial

3    if they felt that the Court's determination of the willfulness issue presented a problem for any

4    subsequent jury trial proceedings.

5         On July 20, 2007, B&D accepted the Court's invitation and filed a motion for

6    reconsideration of bifurcation. [Doc. #171.] B&D explained that it had not appreciated that

7    the Court itself would need to make a finding on willfulness, without the aid of a jury, in any

8    bifurcated trial on equitable defenses. In light of this realization, and its desire to retain its

9    full rights to a jury determination on willfulness, B&D withdrew its request for an expedited

10   bench trial on its equitable defenses.

11        Plaintiff has opposed B&D's motion for reconsideration arguing that there is no

12   authority establishing any right to a jury trial on willfulness and, to the extent such a right

13   exists, B&D has waived its rights by continually requesting that the Court schedule a short

14   bench trial on laches before proceeding with the rest of the action.

15        The Court finds that the right to a jury trial on willfulness exists in a patent action that

16   will be tried to a jury. See, e.g., Richardson v. Suzuki Motor Co., 886 F.2d 1226, 1250 (Fed.

17   Cir. 1989). Having considered the submissions of the parties and the record of these

18   proceedings, the Court does not find that B&D has knowingly waived its right to a jury trial

19   on willfulness. Moreover, the early bifurcated trial on equitable defenses was scheduled by

20   this Court in an effort to accommodate B&D's request for an early determination of laches,

21   which it argued, if found, would greatly expedite the conclusion of this matter. Having

22   recognized that a laches determination requires that this Court determine, before any jury

23   has considered the question, whether Defendants willfully infringed Plaintiff's patent, B&D

24   has withdrawn its request. The Court sees no reason to push ahead with a bifurcated trial

25   despite B&D's express wishes.

26        The Court's recognition of the practical ramifications of the intertwinement of

27   willfulness in any laches determination was the impetus for the Court's invitation to

28   reconsider in its June 20, 2007 order. Having considered B&D's submission, which was

4

06cv1572

**Exhibit p. 33**

1  based upon the exact issues identified in this Court's own order, the Court hereby **GRANTS**

2  B&D's motion.  The bifurcated bench trial on equitable defenses previously scheduled for

3  December 17, 2007 is hereby **VACATED**, along with all pretrial proceedings associated with

4  it, including the November 26, 2007 pretrial conference.

5

6  III.    **Motion to Stay Litigation Pending Reexamination**

7        On August 3, 2007, all Defendants jointly filed a motion for a stay of these

8  proceedings.  Defendants' motion is based on B&D's pending request for reexamination of

9  Plaintiff's '184 Patent, which was filed with the U.S. Patent and Trademark Office ("PTO") on

10  July 30, 2007.  The request for reexamination challenges, *inter alia*, all 5 claims of the '184

11  Patent that are asserted in the present litigation.  The challenge is based on a number of

12  prior art references, almost all of which were apparently not considered by the PTO in the

13  prosecution of the '184 Patent.

14        Courts have inherent power to stay an action pending conclusion of PTO

15  reexamination proceedings. Ethicon, Inc. v. Quigg, 849 F.2d 1422,1426-27 (Fed. Cir. 1988).

16  The decision whether to grant or deny a motion to stay proceedings pending PTO

17  reexamination rests within the sound discretion of the court. See, e.g., Photoflex Products,

18  Inc. v. Circa 3 LLC, No. C 04-03715 JSW, 2006 U.S. Dist. LEXIS 37743, at *2-3 (N.D. Cal.

19  May 24, 2006).  There is a "liberal policy" in favor of granting motions to stay pending the

20  outcome of PTO reexamination proceedings. ASCII Corp. v. STD Entertainment USA, Inc.,

21  844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

22        In determining whether to stay litigation pending reexamination by the PTO, courts

23  generally consider the following factors: (1) the stage of litigation, i.e., whether discovery is

24  almost complete and whether a trial date has been set; (2) whether a stay would cause

25  undue prejudice or present a clear disadvantage to the non-moving party; and (3) whether

26  a stay will simplify the issues in question and trial of the case. See, e.g., Xerox Corp. v.

27  3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999).

28        The Court finds that this litigation has not proceeded so far that it would be unjust to

5

**Exhibit E p. 34**

1  stay the action.  Although this action was originally filed about a year ago, and the Court

2  recognizes that substantial amounts of discovery have already occurred, the more relevant

3  inquiry is whether discovery is nearing completion – it is not.[1]  For instance, Magistrate Judge

4  Bencivengo recently granted the parties permission to take an additional 10 depositions per

5  side. [See Doc. #159 at 2.]  No deadline for the completion of fact discovery has even been

6  set.   Moreover, the parties are just beginning to brief the preliminary issue of claim

7  construction and, in accordance with the decision above to vacate the bifurcated bench trial

8  on equitable defenses, no trial date is currently set for any aspect of this case.  In addition,

9  while the Court has already considered two motions for summary judgment, it previously put

10  off consideration of two others until after claim construction, and Plaintiff has just filed a

11  substantial summary judgment motion aimed at piercing Black & Decker's corporate veil.

12  The Court anticipates that further summary judgment motions regarding infringement and

13  patent validity will be filed once claim construction is complete.  Thus, a substantial amount

14  of resources will be employed by all parties and the Court even in advance of any eventual

15  trial.  See, e.g., Broadcast Innovation, L.L.C. v. Charter Communications, Inc., No. 03-cv-

16  2223-ABJ-BNB, 2006 U.S. Dist. LEXIS 46623, at *26-31 (D. Colo. July 11, 2006) (granting

17  stay, in part, because of significant work remaining on motions for summary judgement, even

18  though trial date was less than three months away).

19       Plaintiff claims Defendants delayed filing their request for reexamination to gain a

20  tactical advantage over it.  He claims that Defendants were aware of the prior art that they

21  reference in their reexamination request over seven months ago, but purposely delayed so

22  that the '184 Patent would expire during the reexamination process, thereby precluding

23  Plaintiff from offering any amendments to the claims.  Defendants respond that there was no

24  intentional delay and that their decision to request reexamination was based, in part, on the

25  Supreme Court decision in KSR International Co. v. Teleflex Inc., 127 S. Ct. 1727 (2007),

26  which was only issued at the end of April.  The Court is not convinced that Defendants

27

28  [1] In reaching this determination, the Court has considered the surreply submitted by Plaintiff and, therefore, the pending ex parte request to file a surreply [Doc. #201] is **GRANTED**.

6

1 employed any improper tactics in filing their request for reexamination. While Plaintiff is
2 rightfully concerned that a reexamination in the twilight of his patent puts him at a distinct
3 disadvantage, he could have prevented this situation by filing suit many years ago, thereby
4 allowing sufficient time for any reexamination to occur before the patent expired.

5 Therefore, Plaintiff's cognizable claims of prejudice if a stay should be entered
6 basically boil down to his inconvenience in delaying final collection of any monetary award
7 of royalties, assuming he ultimately wins. However, as the court recognized in Broadcast,
8 the prejudice factor "is best summarized by one question: do the Plaintiffs have an adequate
9 remedy at law?" 2006 U.S. Dist. LEXIS 46623, at *32. Just as in Broadcast, the answer
10 here is that clearly Plaintiff does have an adequate remedy. Defendants point out, and
11 Plaintiff has not disputed, that the '184 Patent will expire in February 2008 independent of
12 reexamination. Given that a trial on the merits could not occur prior to that date, Plaintiff
13 would not have been granted any injunctive relief by this Court. Therefore, his claim would
14 be restricted to past monetary damages, which, with the addition of prejudgment interest, are
15 fully capable of compensating Plaintiff. Unfortunately, reexamination can be a drawn out
16 process, resulting in a significant delay in court proceedings. Protracted delay is always a
17 risk inherent in granting a stay, yet courts continue to stay actions pending reexamination.
18 The general prejudice of having to wait for resolution is not a persuasive reason to deny the
19 motion for stay. An average delay for reexamination of approximately 18-23 months is
20 especially inconsequential where Plaintiff himself waited as many as twelve years before
21 bringing the present litigation. (See PTO Reexamination Statistics at Ex. B to Niro Decl.;
22 Doc. #180-3.)

23 In addition, the Federal Circuit has recently confirmed that the PTO would not be
24 bound in its reexamination by the determinations of this Court. In re Trans Texas Holdings
25 Corp., 2006-1599 and 2006-1600, 2007 U.S. App. LEXIS 19909, at *14-19 (Fed. Cir. Aug.
26 22, 2007). Because of this, the Court finds that not only is Plaintiff unlikely to be prejudiced
27 in these proceedings by a stay pending the PTO reexamination, but Defendants would
28 potentially be prejudiced by failing to enter a stay. One court has explained this possibility

7

**Exhibit E p. 36**

1    accordingly:

2
3           Not only could the Court and the PTO reach conflicting determinations, but
            one possible scenario could result in irreparable harm to [Defendant]: if this
4           Court finds that the [patent] is not invalid and that [Defendant] has infringed
            it, and orders [Defendant] to pay damages to [Plaintiff] for such infringement,
            then [Defendant] would have no ability to recover those damages if at a later
5           date the PTO determined that the [] patent is invalid.

6    <u>Bausch & Lomb, Inc. v. Alcon Lab., Inc.</u>, 914 F. Supp. 951, 952 (W.D.N.Y. 1996). The Court

7    finds such a possibility to be, at a minimum, a highly undesirable outcome.

8           Finally, the Court finds that the stay will result in the simplification of issues in this

9    case. As explained by the Federal Circuit, "[o]ne purpose of the reexamination procedure

10   is to eliminate trial of [the issue of patent claim validity] (when the claim is canceled) or to

11   facilitate trial of that issue by providing the district court with the expert view of the PTO

12   (when a claim survives the reexamination proceeding)." <u>Gould v. Control Laser Corp.</u>, 705

13   F.2d 1340, 1342 (Fed. Cir. 1983), <u>cert. denied</u>, 464 U.S. 935 (1983). The <u>Broadcast</u> court,

14   elaborating on this point, explained:

15          Shifting the patent validity issue to the PTO has many advantages, including:

16          1. All prior art presented to the Court will have been first considered by the
            PTO, with its particular expertise.
17
            2. Many discovery problems relating to prior art can be alleviated by the PTO
18          examination.

19          3. In those cases resulting in effective invalidity of the patent, the suit will
            likely be dismissed.
20
            4. The outcome of the reexamination may encourage a settlement without
21          the further use of the Court.

22          5. The record of reexamination would likely be entered at trial, thereby
            reducing the complexity and length of the litigation.
23
            6. Issues, defenses, and evidence will be more easily limited in final pretrial
24          conferences after a reexamination.

25          7. The cost will likely be reduced both for the parties and the Court.

26   2006 U.S. Dist. LEXIS 46623, at *9-10 (quoting <u>Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.</u>,

27   3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987)).

28          The Court believes that it will benefit from the PTO's evaluation of how the previously

8

**Exhibit p. 37**

1   unconsidered prior art references impact the claims of the patent-in-suit. The PTO's expert

2   evaluation is likely to be of assistance not only as to the issues of validity, but its

3   understanding of the claims is also likely to aid this Court in the preliminary process of claim

4   construction.

5       The Court finds that, especially in this case, the reexamination process has the

6   potential to significantly narrow the issues for trial because of the impending expiration of the

7   '184 Patent. While the parties have argued at length about exactly how this additional

8   variable affects the calculation of the likely outcome of reexamination, the Court need not

9   resolve this dispute to reach the proper conclusion. It is enough to note that when

10  reexamination is requested by a third party, as in this case, all claims are confirmed only 29%

11  of the time. (See PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. #180-3.) Since

12  no amendments can be offered to an expired patent, there is obviously a significant likelihood

13  that the validity of the claims at issue in this action will be affected by the reexamination

14  process.[2]

15      In addition, the Court expects that the reexamination process will not only aid the

16  Court in these proceedings, but should also redound to the benefit of the parties, both

17  Defendants and Plaintiff. As the Broadcast court explained in its discussion of the possibility

18  of prejudice from entering a stay:

19          If the PTO does not invalidate or otherwise alter the claims of the [] patent,
            the Plaintiffs' legal remedy remains unaffected . . . . Moreover, if the claims
20          are narrowed, both sets of parties will have benefitted by avoiding the
            needless waste of resources before this Court, and again, the Plaintiffs will
21          be able to pursue their claim for money damages at trial. Finally, if the claims
            are strengthened, the Plaintiffs' position will be as well, and their likelihood
22          of monetary damages will increase. See, e.g., Motson, 2005 U.S. Dist.
            LEXIS, 2005 WL 3465664 at *1 ("[I]f the PTO upholds the validity of plaintiff's
23          patent, 'the plaintiff's rights will only be strengthened, as the challenger's
            burden of proof becomes more difficult to sustain.'") (quoting Pegasus Dev.
24          Corp., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073 at *2).

25  _____

26      [2] Plaintiff has argued that the PTO is unlikely to grant reexamination precisely because
    the '184 Patent will expire soon. However, Plaintiff failed to produce any evidence to support
27  this contention. Moreover, even if Plaintiff is correct, and the PTO fails to grant
    reexamination (a decision which should issue no later than October 30, 2007), this Court
28  would immediately lift the stay and these proceedings would continue – a relatively
    insignificant 2-month delay being all that would result.

9                                                          06cv1572

2006 U.S. Dist. LEXIS 46623, at *32-33.  Accordingly, the Court finds that a stay is appropriate to avoid the risk of unnecessary litigation and to permit the clarification of issues before this Court.

Therefore, Defendants' motion to stay this litigation is **GRANTED IN PART** and **DENIED IN PART**.  With the exception of two pending motions, all proceedings are hereby stayed pending the PTO's reexamination of the '184 Patent.  The Court will continue to hear Plaintiff's pending motion for entry of default against Defendant Porter-Cable Corporation [Doc. #182], which is calendared for hearing on October 12, 2007.  As was discussed above in Section I, the Court will also continue to hear B&D's pending motion for reconsideration of Magistrate Judge Bencivengo's August 3, 2007 order regarding production of Dennis Dearing's attorney work product [Doc. #240], which is calendared for hearing on November 2, 2007.  The Clerk is directed to **VACATE** all scheduled discovery hearings, as well as the claim construction hearing previously set for November 19, 2007.  All hearing dates will be reset, to the extent appropriate, once the stay of these proceedings has been lifted.

Defendants are ordered to file a notice informing the Court of the PTO's decision on the pending application for reexamination within 10 days of receipt of such decision.  If the PTO declines B&D's request to reexamine the '184 Patent, the Court will immediately lift the stay and recalendar all vacated hearing dates.  If, however, the PTO approves reexamination, this stay will remain in place pending some resolution of those proceedings.  During the pendency of the reexamination, Defendants will be required to file a notice every 6 months apprising the Court of any change in the status of those proceedings.

IV.    **Motion for Partial Summary Judgment**

On August 30, 2007, Plaintiff filed a motion for partial summary judgment piercing the corporate veils of the Black & Decker Defendants, or in the alternative, holding them to be a single enterprise for purposes of patent infringement liability.  [Doc. #204.]  The motion is presently calendared for hearing on October 26, 2007.  In light of the Court's entry of a stay of these proceedings pending the PTO patent reexamination, the Court finds Plaintiff's

10

1  motion to be premature.  Accordingly, the Court hereby **DENIES** Plaintiff's motion without

2  prejudice.[3]  As the Court is aware of the substantial volume of Plaintiff's motion, he is invited

3  to refile this motion once the stay has been lifted by simply filing a short notice of motion

4  which incorporates by reference his earlier filing.

5

6  **IT IS SO ORDERED.**

7

8  DATED:  September 10, 2007

9  _Barry Ted Moskowitz_

   Honorable Barry Ted Moskowitz

10  United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[3] Plaintiff's pending motion to file confidential documents under seal in support of the motion for partial summary judgment [Doc. #204-5] is also **DENIED** as moot.

11

06cv1572

**Exhibit E p. 40**

# EXHIBIT F

manner of making amendments in reexamination proceedings.

### E. Form Paragraphs - Inter Partes Reexamination

See MPEP § 2666.01 for the form paragraphs to use in *inter partes* reexamination proceedings, in advising the patent owner as to the manner of making amendments.

## II. ALL CHANGES ARE MADE *VIS-A-VIS* THE PATENT BEING REEXAMINED

When a reexamination certificate is printed, all underlined matter is printed in italics and all brackets are printed as they were inserted in the proceeding in order to thereby show exactly which additions and deletions have been made in the patent via the reexamination proceeding. In accordance with 37 CFR 1.530(i), all amendments to the patent being reexamined must be made relative to the patent specification in effect as of the date of the filing of the request for reexamination. The patent specification includes the claims and drawings. If there was a prior change to the patent (made via a prior reexamination certificate, reissue of the patent, certificate of correction, etc.), the first amendment must be made relative to the patent specification as changed by the prior proceeding or other mechanism for changing the patent. All amendments subsequent to the first amendment must also be made relative to the patent specification in effect as of the date of the filing of the request for reexamination, and not relative to the prior amendment.

## III. AMENDMENT AFTER THE PATENT HAS EXPIRED

Pursuant to 37 CFR 1.530(j), "[n]o amendment may be proposed for entry in an expired patent." Thus, if a patent expires during the pendency of a reexamination proceeding for a patent, all amendments to the patent claims and all claims added during the proceeding are withdrawn. This is carried out by placing a diagonal line across all amended and new claims (and text added to the specification) residing in the amendment papers. The patent owner should be notified of this in the next Office action. The Office action will hold the amendments to be improper, and

state that all subsequent reexamination will be on the basis of the unamended patent claims. This procedure is necessary since no amendments will be incorporated into the patent by a certificate after the expiration of the patent.

37 CFR 1.530(j) further states that "[m]oreover, no amendment, other than the cancellation of claims, will be incorporated into the patent by a certificate issued after the expiration of the patent."

Thus, at the time the NIRC is to be issued, the examiner should ensure that all rejected and objected to claims are canceled. The examiner should issue an examiner's amendment canceling any such claims not already canceled.

The cancellation of the original patent claims is the only "amendatory" change permitted in an expired patent.

## IV. EXAMPLES

A substantial number of problems arise in the Office because of improper submission of proposed amendments in reexamination proceedings. The following examples are provided to assist in the preparation of proper proposed amendments in reexamination proceedings.

(A) Original Patent Description Or Patent Claim Amended

(1) Specification - submit a copy of the entire paragraph (of the specification of the patent) being amended with underlining and bracketing. Thus, the amendment would be presented as follows:

> Replace the paragraph beginning at column 4, line 23 with the following:
>
> Scanning [is] are controlled by clocks which are, in turn, controlled from the display tube line synchronization. The signals resulting from scanning the scope of the character are delivered in parallel, then converted into serial mode through a shift register, wherein the shift signal frequency is controlled by a clock that is controlled from the display tube line synchronization.

(2) Claims - for changes to the patent claims, one must submit a copy of the entire patent claim with the amendments shown by underlining and bracketing. Thus, the amendment would be presented as follows: