1  MELODY A. KRAMER, SBN 169984
2  KRAMER LAW OFFICE
   9930 Mesa Rim Road, Suite 1600
3  San Diego, California 92121
   Telephone (858) 362-3150
4
5  J. MICHAEL KALER, SBN 158296
6  KALER LAW OFFICES
   9930 Mesa Rim Road, Suite 200
7  San Diego, California 92121
   Telephone (858) 362-3151
8
9
10  Attorneys for Plaintiff JENS ERIK SORENSEN,
    as Trustee of SORENSEN RESEARCH AND
11  DEVELOPMENT TRUST
12
13
                  UNITED STATES DISTRICT COURT
14
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
15
16  JENS ERIK SORENSEN, as Trustee of   )  Case No. 07cv 05568 JSW
17  SORENSEN RESEARCH AND               )
    DEVELOPMENT TRUST,                  )
18                                      )  PLAINTIFF'S OPPOSITION TO
                                        )  DEFENDANT DIGITAL NETWORKS
19                        Plaintiff     )  NORTH AMERICA, INC.'S MOTION
       v.                               )  FOR STAY
20                                      )
21  DIGITAL NETWORKS NORTH              )  DATE:  January 18, 2008
    AMERICA, INC., a Delaware           )  TIME:  9:00 A.M.
22  corporation; LEGACY SUPPORT         )  Ctrm:  2, 17th Floor
    SERVICES, LTD. d/b/a S2G; and DOES  )  Judge:  Hon. Jeffrey S. White
23  1-100,                              )
24                                      )  PLAINTIFF RESPECTFULLY
                          Defendants.   )  REQUESTS THAT THE COURT
25                                      )  GRANT ORAL ARGUMENT ON THIS
                                        )  MATTER
26                                      )
27  _____    )
28

1

# TABLE OF CONTENTS

2

3  TABLE OF AUTHORITIES ..................................................................................ii

4  SUMMARY OF OPPOSITION .............................................................................1

5  FACTUAL SUMMARY ........................................................................................1

6      The '184 patent    ..........................................................................1
    Accused Products and Defendants ...............................................................2

7      Status of company records relating to manufacture, import, and sale of accused

8          products    3
    Pre-litigation communications between the parties .......................................3

9      Reexamination and the Black & Decker case ...............................................4

10  ARGUMENT    ........................................................................................4

11      I.    A DISTRICT COURT MUST CONSIDER THREE FACTORS IN

12          DETERMINING A REQUEST FOR STAY—PREJUDICE TO NON-
        MOVING PARTY, HARDSHIP TO MOVING PARTY, AND

13          JUDICIAL ECONOMY. ...................................................................4

14

15          A.    There Is A Strong Possibility Of Evidentiary Prejudice To
            Plaintiff If The Requested Stay Is Granted. ...............................5

16

17          B.    Defendant Will Not Suffer Any Hardship If A Stay Is Not

18              Granted At This Stage Of The Proceedings. ............................9

19          C.    Judicial Economy Is Best Served By A PARTIAL Stay Of This

20              Case. .....................................................................................10

21  CONCLUSION    ........................................................................................11

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

3

*ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378 (N.D.Cal. 1994) ...................5

4

*Cognex Corp. v. Nat'l Instruments Corp.,* No. Civ. A. 00-442-JJF, 2001 WL 34368283 (D. Del. June 29, 2001) ..................................10

5

6

*Enprotech Corp. v. Autotech Corp.,* 1990 WL 37217, 15 U.S.P.Q.2d 1319 (N.D.Ill. 1990) .......11

7

*Gladish v. Tyco Toys, Inc.*, 29 U.S.P.Q.2d 1718 (1993) ................................................10

8

*IMAX Corp. v. In-Three, Inc.*, 385 F.Supp.2d 1030 (C.D.Cal. 2005) ................................9, 10, 11

9

*In re Cygnus Telecomm. Tech.,* 385 F.Supp.2d 1022 (N.D.Cal. 2005)..............................6

10

*Jain v. Trimas Corp.*, 2005 WL 2397041, at *1 (2005) ...............................................4, 5

11

*KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661, at *2 (2006)........................5

12

*Landis v. North Am. Co.,* 299 U.S. 248, 57 S.Ct. 163, (1936) .......................................9

13

*Ricoh Co. v. Aeroflex Inc.*, 2006 WL 3708069, at *2 (2006) .........................................5

14

*Telemac Corp. v. Teledigital, Inc.*, 450 F.Supp.2d 1107 (N.D.Cal. 2006)........................5, 6, 10

15

16

*Unidisco v. Schattner,* 210 U.S.P.Q. 622(D.Md.1981) ................................................9

17

*Viskase Corp. v. American Nat. Can Co.*, 261 F.3d 1316 (Fed. Cir. 2001) ....................4

18

19

20

21

22

23

24

25

26

27

28

**SUMMARY OF OPPOSITION**

Defendant Digital Networks' motion for stay should be DENIED as there is a substantial likelihood that the non-moving Plaintiff will suffer substantial prejudice if a complete stay of the litigation is granted, and the Court has insufficient information to determine whether judicial economy would be served by a stay.

Plaintiff respectfully requests that the Court issue an alternative order, which is a PARTIAL stay of the case, postponing claim construction briefing and trial, but allowing the parties to proceed with discovery related to production methods, sales data, and other matters for which claim construction is not critical, to avoid the serious risk of loss of evidence that would prejudice Plaintiff.

FACTUAL SUMMARY

The '184 patent.  This case involves patent infringement allegations related to U.S. Patent No. 4,935,184, a process patent relating to multi-shot injection molding of plastics.  A common application of use of this patent is dual plastic ski boots, consumer electronic products, kitchen utensils, and rubberized grips on the handles of power tools.  Kramer Decl. ¶ 4.

The '184 patent has been licensed for use by such household name companies as 3M Company, BMW, Newell Rubbermaid, Hitachi-Maxell, Mercedes-Benz USA, Daimler-Chrysler, Philips Electronics, Robert Bosch, Thales (Magellan), Garmin International, Head USA, Nordica USA, Tecnica USA, Rossignol, Atomic Ski, Skil, Irwin Tools, Dremel, Strait-Line, Chicony Electronics, The Stanley Works, Milwaukee Electric, Welch Allyn, Griffin, Stanley Electric, Fluke, Acco, Harper Brush, Woodstream, and Roche.  Kramer Decl. ¶ 5.

The '184 patent provides a long-sought elegant solution to a pervasive problem in the injection molding of hollow plastic products: i.e., how to stabilize the mold parts against relative movement during the highly pressurized injection of melted plastic.  This mold part relative movement problem causes misalignment of

1.

1    the mold parts and results in products with walls of uneven thicknesses if not

2    adequately controlled.  Kramer Decl. ¶ 6.

3        The '184 patented method is directed toward stabilizing the mold parts against

4    relative movement during the second injection of injection molding of laminated

5    plastic parts produced sequentially in two cavities made up of at least one common

6    mold part and at least two different complementary mold parts.  Kramer Decl. ¶ 7.

7        The '184 patent teaches a method to stabilize the mold parts during the second

8    or later plastic injection by molding one or more stabilizing regions into the first

9    plastic material component(s) that rigidly secure the two mold parts against

10    displacement during the second or later injection.  Kramer Decl. ¶  8.

11        By stabilizing the mold parts against mold part relative movement during the

12    injection process, hollow products may be produced having more controlled

13    dimensions. Kramer Decl. ¶ 9.

14        Accused products and the Defendants.  The products accused of infringement

15    in this case are Rio-brand MP3 players.  Rio MP3 players were originally produced

16    by Diamond Multimedia.  Diamond Multimedia was sold to Taiwanese graphics chip

17    company S3.  S3 then sold its chip business and morphed into SonicBlue.  SonicBlue

18    declared bankruptcy in early 2003.  Kramer Decl. ¶¶ 10-11.

19        DNNA was created in July 2003 (apparently by D&M Holdings Inc.) and

20    acquired the Rio line from the SonicBlue bankruptcy estate.  Shortly thereafter, in

21    August 2003, DNNA announced the launch of five new MP3 players and aggressive

22    strategies for building the Rio line.  Kramer Decl. ¶¶ 12-13.

23        However, by summer of 2005, DNNA's parent company announced that it

24    was selling off most of its Rio technology to SigmaTel, with most of the design and

25    technical personnel being hired by SigmaTel.  DNNA has claimed that it ceased

26    sales of the accused MP3 players in September 2005.    Kramer Decl. ¶ 14.

27    _____

28        [1] Despite DNNA's claim, sales of the originally accused Rio MP3 players, and
       other models that also appear to infringe, continue to be sold via DNNA's website

1    Status of company records relating to manufacture, import, and sale of accused

2    products. Before the filing of this litigation, Defendant's counsel, Mr. Hulbert,

3    represented to Plaintiff's counsel, Ms. Kramer, that the SigmaTel acquisition left

4    DNNA's records in a state of disarray and represented that DNNA would have

5    difficulty finding actual sales numbers of the accused products. Although DNNA

6    appears to still be in business, Dun and Bradstreet reported an inability to confirm

7    operations as recently as March 2007. Kramer Decl. ¶¶ 15-16.

8    By letter to Plaintiff's counsel in February 2006, D&M Holdings USA

9    General Counsel, Mr. Meisels, stated:

10

11    The Rio products that were formerly produced by DNNA were
      manufactured overseas by third-party contract manufacturers. DNNA
12    has requested input from these manufacturers concerning the issues
      raised in your letter as it relates to the Rio products. Communications
13    with overseas contract manufacturers often move slowly
14    notwithstanding diligent efforts. Not having continuing business with
      these entities increases the difficulties.
15

16    Kramer Decl. 17, Exhibit G.

17    Neither Mr. Meisels nor DNNA's outside counsel ever confirmed receipt of

18    information from these manufacturers or otherwise revealed the status of those

19    requests. Plaintiff does not know the identity or contact information for those

20    companies. Kramer Decl. ¶ 18.

21    Pre-litigation communication between the parties. Plaintiff's counsel, J.

22    Michael Kaler, sent an initial infringement notice to DNNA in October 2004. Co-

23    counsel Melody Kramer followed up on those efforts both in writing and by

24    telephone with representatives for DNNA. At no time during those communications

25    did DNNA represent that it was claiming that the '184 patent was invalid. To the

26    _____

27    (www.digitalnetworksna.com) which links to a website run by co-defendant Legacy
      Support Services, Ltd., a company doing business as S2G.

28

3.

1   contrary, at least the last year of communications could be categorized as
2   negotiations over an appropriate licensing/release fee.  No agreement was reached
3   and thus this suit was filed. *Kramer Decl. ¶ 19.*

4       Reexamination and the Black & Decker case.  Plaintiff commenced patent
5   infringement litigation against Black & Decker Corporation in August 2006.  After
6   almost a year of intense litigation, with a claim construction and trial of affirmative
7   defenses and willfulness already scheduled, and within days after entry of an order
8   requiring Black & Decker to turnover documents from its late in-house counsel's
9   files, Black & Decker (U.S.) Inc. filed a request for reexamination of the '184 patent.
10  *Kramer Decl. ¶ 21.*

11      The reexamination request was accepted by the USPTO and Plaintiff is
12  currently awaiting receipt of a first office action. *Kramer Decl. ¶ 22.*

13

14                          **ARGUMENT**

15

16  **I.    A DISTRICT COURT MUST CONSIDER THREE FACTORS IN
           DETERMINING A REQUEST FOR STAY—PREJUDICE TO NON-
17         MOVING PARTY, HARDSHIP TO MOVING PARTY, AND JUDICIAL
           ECONOMY.**
18

19      A district court is not required to stay judicial resolution of a patent
20  infringement dispute in view of a pending reexamination.  *Viskase Corp. v. American*
21  *Nat. Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001).  A court must weigh the parties
22  competing interests as presented by the specific facts of the case at bar.  *Jain v.*
23  *Trimas Corp.*, 2005 WL 2397041, at *1 (E.D.Cal. Sept. 27, 2005).
24      When determining the appropriateness of a stay pending reexamination, courts
25  consider three factors: "(1) whether a stay would unduly prejudice or present a clear
26  tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the
27  issues in question and trial of the case; and (3) whether discovery is complete and
28

1   whether a trial date has been set. *Ricoh Co. v. Aeroflex Inc.*, 2006 WL 3708069, at

2   *2 (N.D.Cal. Dec. 14, 2006) (quoting *ASCII Corp. v. STD Entertainment USA, Inc.*,

3   844 F. Supp. 1378, 1380 (N.D.Cal. 1994)); *see also Jain*, 2005 WL 2397041, at *1;

4   *KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661, at *2 (N.D.Cal. Mar. 16,

5   2006).

6       Defendant's motion should be denied as there is a substantial likelihood that

7   the non-moving party, Plaintiff, will suffer great prejudice if a complete stay of the

8   litigation is granted, and, further, judicial economy can be served without entry of a

9   complete stay at this stage in the proceedings, because the deteriorating situation

10  with the manufacturer and its former suppliers indicates that loss of critical evidence

11  is highly likely; and witnesses are likely to be scattered to the four winds over time.

12
13      **A.      There Is A Strong Likelihood Of Evidentiary Prejudice To Plaintiff
                  If The Requested Stay Is Granted.**

14      Plaintiff will likely suffer substantial prejudice if Defendants request for a

15  complete stay is granted because Defendant's own representations demonstrate a

16  high risk of loss of critical evidence if this case is stayed before preliminary

17  discovery is conducted. Such a showing of prejudice and clear tactical disadvantage

18  weighs strongly against a stay.

19      For instance, in *Telemac*, motions to stay pending patent reexamination were

20  denied where the likely length of reexamination served to exacerbate the risk of lost

21  evidence. One of the defendants' individual sales records had already been lost, and

22  the other defendant was in a precarious financial position. *Telemac Corp. v.

23  Teledigital, Inc.*, 450 F.Supp.2d 1107, 1111 (N.D.Cal. 2006). As the *Telemac* court

24  noted:

25
26          [Defendant's] failure to preserve individual records suggests that
27          further delay could lead to further loss of information. Although the
            likely length of reexamination is not, in itself, evidence of undue
28          prejudice, in the circumstances of this case, a possible lengthy delay

would put [plaintiff] at a clear tactical disadvantage.  The Court finds
that this favor weighs strongly against a stay.

*Id.*

Here, due to repeated turnover in corporate ownership and personnel of the
accused product line, as well as the involvement of a series of contract overseas
manufacturers, it may be extraordinarily difficult to locate information regarding the
process used to manufacture the accused products, much less evidence relating to
issues of damages and willfulness.  The likely length of reexamination[2] will only
serve to exacerbate the high risk of loss of evidence in this case.  Thus, as in
*Telemac*, a stay will serve to unduly prejudice Plaintiff and place Plaintiff at a clear
tactical disadvantage in its efforts to prove its case of infringement.

Repeated turnover of corporate ownership during relevant time periods.  The
products accused of infringement in this case are Rio-brand MP3 players.  The
ownership and control of the Rio product line and suppliers of components have
changed hands repeatedly during its years of existence and production of the
products appears to have ceased, making it difficult to ascertain the identity of
knowledgeable persons and custodians of relevant records.

Rio MP3 players were originally produced by Diamond Multimedia.
Diamond Multimedia was sold to Taiwanese graphics chip company S3.  S3 then
sold its chip business and morphed into SonicBlue.  SonicBlue declared bankruptcy
in early 2003.

DNNA was created in July 2003 (apparently by D&M Holdings Inc.) and
acquired the Rio line from the SonicBlue bankruptcy estate.  Shortly thereafter, in

---

[2] Reexaminations generally take from six months to three years. *Telemac*, 405 F.
Supp.2d at 1110 (citing *In re Cygnus Telecomm. Tech., LLC Patent Litig.*, 385 F.Supp.2d
1022, 1023 (N.D.Cal. 2005).  The '184 patent reexamination is already in its sixth month
and the first office action has not yet issued.

Case No. 07CV05568 JSW

1    August 2003, DNNA announced the launch of five new MP3 players and aggressive

2    strategies for building the Rio line.

3    However, by summer of 2005, DNNA's parent company announced that it

4    was selling off most of its Rio technology to SigmaTel, with most of the design and

5    technical personnel being hired by SigmaTel.  DNNA has claimed that it ceased

6    sales of the accused MP3 players in September 2005.[3]  The risk of loss of evidence

7    as time passes beyond the completion of production by foreign-based contract

8    suppliers is even greater.

9    Before the filing of this litigation, Defendant's counsel, Mr. Hulbert,

10   represented to Plaintiff's counsel, Ms. Kramer, that the SigmaTel acquisition left

11   DNNA's records in a state of disarray and represented that DNNA would have

12   difficulty finding actual sales numbers of the accused products.  Although DNNA

13   appears to still be in business, Dun and Bradstreet reported an inability to confirm

14   operations as recently as March 2007.

15   Turnover in personnel.  Plaintiff's initial infringement notice to DNNA in

16   October 2004 went to President, Hugh Cooney, at DNNA's Santa Clara, California

17   address.  He never responded to that notice.  Plaintiff made further attempts to

18   contact DNNA, finally receiving a letter from David Meisels, General Counsel for

19   D&M Holdings US, Inc. (presumably DNNA's parent company) who advised that

20   Mr. Cooney was no longer employed by DNNA.

21   In May 2006, outside counsel for DNNA, Mr. Hulbert, sent Ms. Kramer a

22   declaration relating to a claimed cessation of sales of the accused MP3 players as of

23   September 2005 signed by Bernie Sepaniak identifying himself as President of

24   Digital Networks North America, Inc.  However, Plaintiff has been unable to

25   _____

     [3] Despite DNNA's claim, sales of the originally accused Rio MP3 players, and
26   other models that also appear to infringe, continue to be sold via DNNA's website
     (www.digitalnetworksna.com) which links to a website run by co-defendant Legacy
27   Support Services, Ltd., a company doing business as S2G.

28

confirm Mr. Sepaniak's capacity, and in fact has since located a press release from D&M Holdings regarding Mr. Sepaniak dated December 2006 that puts into question whether Mr. Sepaniak even was President of DNNA or the Rio line. *Kramer Decl. ¶ 25*, Exhibit H.

Additionally, public reports show that a portion of the Rio personnel were transferred to SigmaTel, making them difficult to identify and locate.

Substantial difficulty in obtaining manufacturing information.  Mr. Meisels' February 2006 letter stated:

> The Rio products that were formerly produced by DNNA were manufactured overseas by third-party contract manufacturers.  DNNA has requested input from these manufacturers concerning the issues raised in your letter as it relates to the Rio products.  Communications with overseas contract manufacturers often move slowly notwithstanding diligent efforts.  Not having continuing business with these entities increases the difficulties.

*Kramer Decl. ¶ 17*, Exhibit G.

Neither Mr. Meisels nor DNNA's outside counsel ever confirmed receipt of information from these manufacturers or otherwise revealed the status of those requests.  Because Plaintiff does not know even the identity or contact information for those companies, Plaintiff has no means of doing any independent investigation either.

There is no reasonable assurance that records relating to the acquisition, design, manufacture, import, and sales of the accused MP3 players will still be available, or locatable, when reexamination of the '184 patent is complete.  DNNA already claims difficulty in finding records now.  That situation can only get worse over time. It is likely that all records and persons with knowledge of relevant information will be gone and untraceable after the passage of another year or two for the completion of the reexamination.  Furthermore, if Plaintiff is unable to ascertain the location of records of sales, it will be greatly prejudiced in its ability to prove

1    reasonable royalty amounts.  Evidence relating to knowledge and willfulness will
2    likely disappear as well.

3        If DNNA's informal representations are correct, that manufacture has ceased
4    and that manufacture was done by overseas, third-party contract manufacturers, both
5    sides will suffer prejudice in preparing their infringement and non-infringement
6    cases.  Acquisition of factual information regarding the manufacturing process is not
7    dependent upon completion of the reexamination, nor a claim construction hearing
8    by the Court.

9
10      **B.    Defendant Will Not Suffer Any Hardship If A Stay Is Not Granted
           At This Stage Of The Proceedings.**

11      "The suppliant for a stay must make out a clear case of hardship or inequity in
12   being required to go forward, <u>if there is even a fair possibility that the stay for which</u>
13   <u>he prays will work damage to someone else</u>."  *IMAX Corp. v. In-Three, Inc.*, 385
14   F.Supp.2d 1030, 1032 (C.D.Cal. 2005) (emphasis added) (quoting *Unidisco v.*
15   *Schattner,* 210 U.S.P.Q. 622, 629 (D.Md.1981) (citing *Landis v. North Am. Co.,* 299
16   U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936)).

17      As described above, there is a significant risk that the requested stay would
18   damage Plaintiff, and even possibly damage the moving party.  Therefore, Defendant
19   DNNA must make out a clear case of hardship or inequity if no stay is ordered.
20   Defendant has not done so.

21      DNNA's moving papers have failed to identify any particular hardship that it
22   would suffer as a result of no stay being granted other than things that are the natural
23   result of being a defendant in a patent infringement case.

24      DNNA cites the *Bausch & Lomb* case for the proposition that Defendant could
25   suffer irreparable harm if the Court found the patent valid and infringed, and
26   Defendant would pay damages that they could not recover in the event of a later
27   USPTO finding of invalidity.  This sole claim of prejudice is entirely mooted if the

28

1    Court issues a partial stay, staying only claim construction and trial of the case until

2    after completion of the reexamination, while allowing discovery and other matters to

3    go forward.

4         Plaintiff is not proposing that this case progress all the way to the eve of trial,

5    or even claim construction, during the pendency of the reexamination.   Rather,

6    Plaintiff agrees that expert depositions on claim construction, claim construction

7    briefing and hearing, as well as trial on infringement, can and should wait until

8    conclusion of the reexamination proceedings.   However, Defendant will not suffer

9    any prejudice by filing a responsive pleading to the complaint, and responding to

10   limited discovery requests aimed at preservation of evidence. Some examples of

11   critical discovery that does not require completion of the reexamination include:  (1)

12   information on the manufacturing processes used;  (2) production and sales numbers;

13   and (3) the identities and locations of knowledgeable witnesses, documents and

14   physical evidence.

15

16        **C.    Judicial Economy Is Best Served By Only a PARTIAL Stay Of This
          Case.**

17        Some courts have found that judicial economy does not warrant a stay pending

18   reexamination.  Although reexamination may simplify issues for trial, it often leaves

19   a myriad of issues unresolved and unaddressed for long periods of time.  *IMAX*, 385

20   F.Supp.2d at 1033; *Telemac*, 450 F.Supp.2d at 1111; *Gladish v. Tyco Toys, Inc.*, 29

21   U.S.P.Q.2d 1718, 1993 WL 625509, at *2 (E.D.Cal. Sept. 15, 1993).

22

23        As some courts have noted, when reexamination potentially will
          eliminate only one issue out of many, a stay is not warranted."  In
24        *Cognex Corp. v. Nat'l Instruments Corp.,* No. Civ. A. 00-442-JJF,
          2001 WL 34368283 (D. Del. June 29, 2001), for example, the court
25        concluded that a stay would not simplify the issues because the
          complaint alleged "a variety of claims which are not linked to the
26        patent infringement claim." *Id.* at *2. Similarly, in *Gladish v. Tyco
27        Toys Inc.,* 1993 WL 625509, 29 U.S.P.Q.2d 1718, 1720
28

Case No. 07CV05568 JSW

1

2

3

4

5

6

7

8

(E.D.Cal.1993), the court noted that "[t]he reexamination proceeding will not finally resolve all the issues in the litigation." In that case, invalidity was asserted on more grounds than prior publications and patents, the only grounds the PTO considers during reexamination. The court concluded that it was "the only forum for complete consideration of ... evidence of invalidity." *Id.* Because even after the reexamination, invalidity would continue to be an issue (unless all claims were cancelled), a stay would not preserve many resources. *Id.; see also Enprotech Corp. v. Autotech Corp.,* 1990 WL 37217, 15 U.S.P.Q.2d 1319, 1320 (N.D.Ill. 1990) (denying motion to stay in part because PTO would not resolve claims of inequitable conduct).

9

*IMAX*, 385 F.Supp.2d at 1032-33.

10

11

12

13

14

15

16

17

18

There is no indication to what degree the reexamination will resolve issues in dispute between the parties to this suit, if any. DNNA has not filed any answer or responsive pleading (and has been granted an extension to file same). Therefore, the parties and the Court do not even know if DNNA takes the position that the '184 patent is invalid (DNNA never asserted invalidity during the three-year pre-litigation communications) nor on what grounds. Nor do the parties or the Court know which affirmative defenses or counterclaims will be asserted in this case, if any. Given the stage of the litigation, the factor of judicial economy cannot be properly weighed in the analysis of whether to stay this suit.

19

20

## CONCLUSION

21

22

23

24

25

26

Plaintiff respectfully requests that the Court deny Defendant DNNA's motion for stay as framed, require Defendants to respond to the Amended Complaint, and allow the parties to conduct limited discovery to avoid the loss of necessary evidence during the time that the '184 patent is in reexamination. The Court could then wait to schedule claim construction briefing and trial for a time after the reexamination is concluded. Specifically, Plaintiff requests the Court to issue an order as follows:

27

28

Case No. 07CV05568 JSW

1    1.    Require Defendants to file a responsive pleading pursuant to

2   Fed.R.Civ.P. Rules 8 and 12 within 10 days, to allow the Court and Plaintiff to know

3   what Defendants assertions and defenses are in this case;

4    2.    Require the parties to engage in a Rule 26 discovery conference to

5   outline the scope of discovery anticipated by all parties and propose a discovery

6   schedule to cover aspects of the case that do not directly bear on the scope of

7   invalidity being considered by the USPTO in reexamination or on explicit claim

8   construction;

9    3.    Require the parties to exchange initial disclosures pursuant to Rule 26;

10    4.    Allow both parties to conduct depositions and written discovery

11   requests to preserve evidence for the purposes of later trial as follows:  the identity

12   and location of manufacturers of the Accused Products, the volume of sales of the

13   Accused Products identified in the Amended Complaint; and the manufacturing

14   processes used to produce the Accused Products.

15

16

17   DATED this Thursday, December 27, 2007.

18

19                          JENS ERIK SORENSEN, as Trustee of
                            SORENSEN RESEARCH AND DEVELOPMENT
20                          TRUST, Plaintiff

21

22                          /s/ J. Michael Kaler

23                          _____
                            Melody A. Kramer, Esq.
24                          J. Michael Kaler, Esq.
                            Attorneys for Plaintiff
25

26

27

28

1

## PROOF OF SERVICE

2

    I, J. Michael Kaler, declare:  I am and was at the time of this service working within in the

3

County of San Diego, California.  I am over the age of 18 year and not a party to the within action.

My business address is the KaLer Law Office, Inc., 9930 Mesa Rim Road, Suite 200, San Diego,

4

California, 92121.  I am a member of the State Bar of California and the Bar of this Court.

5

    On December 27, 2007, I served on the parties to this action the following documents:

6

**PLAINTIFF'S OPPOSITION TO DEFENDANT DIGITAL NETWORKS NORTH**

7

**AMERICA, INC.'S MOTION FOR STAY; and DECLARATION OF MELODY A.**
**KRAMER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT DIGITAL**

8

**NETWORKS NORTH AMERICA, INC.'S MOTION FOR STAY**

9

| PERSON(S) SERVED | PARTY(IES) SERVED | METHOD OF SERVICE |
|---|---|---|
| David A. Jakopin<br>Theodore K. Bell<br>Daniel J. Richert<br>Pillsbury Winthrop et al<br>2475 Hanover Street<br>Palo Alto, CA 94304-1114<br>david.jakopin@pillsburylaw.com<br>tad.bell@pillsburylaw.com<br>Daniel.richert@pillsburylaw.com<br>650-233-4545 FAX | Defendant Digital Networks North America, Inc. | Email – Pleadings Filed with the Court |
| Bradley J. Hulbert<br>Richard A. Machonkin<br>Kurt W. Rohde<br>McDonnell Boehnen et al<br>300 South Wacker Drive<br>Chicago, IL 60606-6709<br>hulbert@mbhb.com<br>machonkin@mbhb.com<br>rohdek@mbhb.com<br>312-913-0002 FAX | Defendant Digital Networks North America, Inc. | Email – Pleadings Filed with the Court |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

    ☐    (Personal Service) I caused to be personally served in a sealed envelope hand-delivered

27

to the office of counsel during regular business hours.

28

    ☐    (Federal Express) I deposited or caused to be deposited today with Federal Express in a

1   sealed envelope containing a true copy of the foregoing documents with fees fully prepaid
2   addressed to the above noted addressee for overnight delivery.

3       ☐   (Facsimile) I caused a true copy of the foregoing documents to be transmitted by
            facsimile machine to the above noted addressees.  The facsimile transmissions were
4           reported as complete and without error.

5       ☐   (Email) I emailed a true copy of the foregoing documents to an email address
            represented to be the correct email address for the above noted addressee.
6

7       ☒   (Email--Pleadings Filed with the Court) Pursuant to Local Rules, I electronically filed
            this document via the CM/ECF system for the United States District Court for the
8           Southern District of California.

9

10  I declare that the foregoing is true and correct, and that this declaration was executed on Thursday,
    December 27, 2007, in San Diego, California.
11

12                                          /s/ J. Michael Kaler
                                            _____
13                                          J. Michael Kaler

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 07CV05568 JSW