1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   DAVID A. JAKOPIN #209950
2   david.jakopin@pillsburylaw.com
   THEODORE K. BELL #184289
3   tad.bell@pillsburylaw.com
   DANIEL J. RICHERT #232208
4   daniel.richert@pillsburylaw.com
   2475 Hanover Street
5  Palo Alto, CA 94304-1114
   Telephone: (650) 233-4500
6  Facsimile: (650) 233-4545

7  MCDONNELL BOEHNEN HULBERT & BERGHOFF LLP
   BRADLEY J. HULBERT
8   hulbert@mbhb.com
   RICHARD A. MACHONKIN
9   machonkin@mbhb.com
   KURT W. ROHDE
10   rohdek@mbhb.com
   300 South Wacker Drive
11 Chicago, IL 60606-6709
   Telephone: (312) 913-0001
12 Facsimile: (312) 913-0002

13 Attorneys for Defendant
   DIGITAL NETWORKS NORTH AMERICA, INC.

14

15              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
16

17 JEN ERIK SORENSEN, as Trustee          )
   of SORENSEN RESEARCH AND               )
18 DEVELOPMENT TRUST,                     )        No. 07 CV 5568  JSW
                                          )
19            Plaintiff,                  )   **DEFENDANT DIGITAL NETWORKS**
                                          )   **NORTH AMERICA'S REPLY TO**
20       v.                               )   **PLAINTIFF'S OPPOSING BRIEF**
                                          )   **TO DEFENDANT'S MOTION FOR STAY**
21 DIGITAL NETWORKS NORTH                 )
   AMERICA, INC., a Delaware              )   Date: January 18, 2008
22 corporation; LEGACY SUPPORT            )   Time: 9:00 A.M.
   SERVICES, LTD. d/b/a S2G; and          )   Ctrm: 2, 17th Floor
23 DOES 1-100,                            )   Judge: Hon. Jeffrey S. White
                                          )
24            Defendants.                 )
                                          )
25

26

27

28

1

## TABLE OF CONTENTS

2   I.     ISSUE ...................................................................................................................1

3   II.    SUPPLEMENTAL STATEMENT OF FACTS..........................................................1

4   III.   ARGUMENT .........................................................................................................1

5          A.    Plaintiff Will Not Be Unduly Prejudiced By This Stay ...............................1

6          B.    The Plaintiff Delayed In Bringing This Case ............................................5

7          C.    Plaintiff's Proposed "Partial" Stay Is No Stay At All ................................6

8   IV.    CONCLUSION .....................................................................................................8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3   Broadcast Innovation, LLC v. Charter Communs., Inc.,
        2006 U.S. Dist. LEXIS 46623 (D.Colo. Jul. 11, 2006) ............................................... 6
4

5   EEOC v. Gear Petroleum, Inc.,
        948 F.2d 1542 (10th Cir. 1991) .................................................................................... 3

6   Hewlett-Packard Co. v. Acuson Corp.,
        1993 U.S. Dist. LEXIS 6449 (N.D.Cal. 1993) ............................................................ 5
7

8   Ingro v. Tyco Indus., Inc.,
        227 U.S.P.Q. 69 (N.D.Ill. 1985) .................................................................................. 5

9   Photoflex Prods.,
        2006 U.S. Dist. LEXIS 37743 (N.D. Cal. May 24, 2006) (White, J.)........................ 7
10

11  St. Paul Fire and Marine Ins. Co. v. Brother Intern. Corp.,
        2007 WL 2571960 (D.N.J. 2007)................................................................................. 2

12  Target Therapeutics, Inc. v. SciMed Life Systems, Inc.,
        33 U.S.P.Q.2d 2022 (N.D. Cal. Jan. 13, 1995)........................................................... 6
13

14  Telemac Corp. v. Teledigital, Inc. et al.,
        450 F.Supp.2d 1107 (N.D.Cal. 2006)....................................................................... 3, 4

15              <u>Rules and Regulations</u>

16  Federal Rules of Civil Procedure
        Rule 10............................................................................................................................ 7
17

18  Federal Rules of Civil Procedure
        Rule 12............................................................................................................................ 7

19  Federal Rules of Civil Procedure
        Rule 8.............................................................................................................................. 7
20
                <u>Other Authorities</u>
21

22  David W. Louisell & Christopher B. Mueller,
        Federal Evidence § 170, at 443 (rev. vol. 2 1985) ...................................................... 3

23  McCormick on Evidence at 186 (5th ed. 1999) .................................................................. 3

24

25

26

27

28

1   **I.      ISSUE**

2        Defendant Digital Networks North America, Inc. ("DNNA") respectfully moves for

3   a complete stay of the above-captioned proceeding pending the ongoing United States

4   Patent & Trademark Office ("PTO") reexamination of the patent-in-suit, U.S. Patent No.

5   4,935,184 ("the '184 patent").

6   **II.     SUPPLEMENTAL STATEMENT OF FACTS**

7        Defendant DNNA offers the following additional facts to supplement those

8   described in its Memorandum of Points and Authorities in Support of Defendant's Motion

9   to Stay the Litigation Pending the Outcome of Reexamination Proceedings.

10       DNNA is still in operation as an on-going business and has no present intention of

11  disbanding operations.  (Golio Decl. ¶2).

12       DNNA has custody and control of archived sales figures for DNNA's sales of the

13  known accused products for the time period from DNNA's acquisition of the product line

14  until the present.  DNNA has taken affirmative steps to preserve those archived sales figure

15  documents, as well as all other documents relevant to this litigation.  (Golio Decl. ¶3).

16       In case Plaintiff has not already identified the manufacturer of the accused products

17  during its own investigations, Liteon Technology Corporation, located at 4F, No. 90, Chien

18  I Rd, Chungho, Taipei Hsien 235, Taiwan, manufactured for DNNA the products accused

19  of infringement.  (Golio Decl. ¶4).

20  **III.    ARGUMENT**

21       **A.      Plaintiff Will Not Be Unduly Prejudiced By This Stay**

22       The Plaintiff has presented no valid evidence of prejudice.  In an attempt to portray

23  innuendo as evidence, Sorensen: (1) incorrectly casts doubt on the viability of DNNA as an

24  on-going business through the use of non-current information from Dun and Bradstreet

25  ("D&B"); and, (2) improperly uses statements made by DNNA counsel during the course of

26  compromise negotiations with respect to the first point.

27       Sorensen asserts that "Dun and Bradstreet reported an inability to confirm [DNNA]

28  operations as recently as March 2007."  (Plaintiff's Opposing Brief, Docket #34, page 3,

1    lines 5-7.)  As Mark Twain famously remarked upon learning of the false publication of his

2    own obituary, "The reports of my demise were greatly exaggerated."  Had Sorensen's

3    counsel provided this Court with a current D&B report, it would show that DNNA is indeed

4    in operation.  A current D&B report, obtained the same day Plaintiff filed its Opposing

5    Brief, is included with the attached Declaration.  (Second Rohde Decl. ¶2, Exhibit A.)

6    Additionally, the Declaration of Dominick J. Golio, Treasurer and Senior Vice President of

7    DNNA, confirms that DNNA is an on-going business and has no intention of disbanding

8    operations.  (Golio Decl. ¶2).

9        Next, defendant DNNA objects to the use in Plaintiff's Opposing Brief of certain

10    alleged statements made by DNNA counsel during the course of on-going compromise

11    negotiations.  Federal Rule of Evidence 408 states, in relevant part, that "[e]vidence of the

12    following is not admissible on behalf of any party, when offered … to impeach through a

13    prior inconsistent statement or contradiction: … conduct or statements made in compromise

14    negotiations regarding the claim …."

15        Sorensen and DNNA have engaged in compromise negotiations since contact was

16    first established between the parties in 2004.  Sorensen admits that Plaintiff's counsel and

17    DNNA's counsel have engaged in compromise negotiations over at least the last year.

18    (Plaintiff's Opposing Brief, Docket #34, page 4, lines 1-2, "… at least the last year of

19    communication could be categorized as negotiations over an appropriate licensing/release

20    fee.")  Sorensen has alleged that DNNA counsel made certain statements to Sorensen

21    during the course of these compromise negotiations.  *Id.* at page 2, line 25 – page 3, 20;

22    page 7, line 2 – page 8, line 15; page 8, lines 23-25.  Such statements are inadmissible

23    under Federal Rule of Evidence 408 ("FRE408") in that they portray DNNA as having

24    made prior inconsistent statements, where the prior statements were made during the course

25    of compromise negotiations.  *See also St. Paul Fire and Marine Ins. Co. v. Brother Intern.*

26    *Corp.*  2007 WL 2571960, *17-18 (D.N.J. 2007) (striking background information

27    concerning settlement negotiations which was included in a motion opposing summary

28    judgment, a statement of fact, and a certification).

1    Specifically, DNNA has previously asserted, and continues to assert, that Sorensen

2   will not be prejudiced by granting the stay pending reexamination of the patent.  Plaintiff is

3   using the alleged statements made by DNNA's counsel during compromise negotiations as

4   evidence of prejudice to the Plaintiff, thus casting the alleged DNNA statements to the

5   contrary as inconsistent.  Such use goes against the public policy of allowing the frank

6   interchange of information during negotiations, as indicted in the Advisory Committee

7   Notes relating to the 2006 Amendment, which prohibited the use of such statements.

8           The amendment prohibits the use of statements made in settlement
            negotiations when offered to impeach by prior inconsistent statement or
9           through contradiction. Such broad impeachment would tend to swallow the
            exclusionary rule and would impair the public policy of promoting
10          settlements.  See *McCormick on Evidence* at 186 (5th ed. 1999)("Use of
            statements made in compromise negotiations to impeach the testimony of a
11          party, which is not specifically treated in Rule 408, is fraught with danger of
            misuse of the statements to prove liability, threatens frank interchange of
12          information during negotiations, and generally should not be permitted.").

13  Federal Rule of Evidence 408, Advisory Committee Notes to 2006 Amendment.

14    Further "the risks of prejudice and confusion entailed in receiving settlement

15  evidence are such that often ... the underlying policy of Rule 408 require[s] exclusion even

16  when a permissible purpose can be discerned." *EEOC v. Gear Petroleum, Inc.*, 948 F.2d

17  1542 (10th Cir. 1991) (quoting David W. Louisell & Christopher B. Mueller, Federal

18  Evidence § 170, at 443 (rev. vol. 2 1985)) (letter sent as part of settlement negotiation

19  cannot be used to impeach defense witnesses by way of contradiction or prior inconsistent

20  statement; such broad impeachment would undermine the policy of encouraging

21  uninhibited settlement negotiations).  Consequently, DNNA submits that the alleged

22  statements are not valid evidence of prejudice to Plaintiff and DNNA strongly objects to the

23  disclosure of, and attempted reliance on, the alleged statements by Plaintiff.

24    In asserting alleged prejudice to Plaintiff, Sorensen relies heavily on *Telemac Corp.*

25  *v. Teledigital, Inc. et al.*, 450 F.Supp.2d 1107, 1111 (N.D.Cal. 2006) for the proposition that

26  Plaintiff will suffer "substantial prejudice" if a stay is granted.  (Plaintiff's Opposing Brief,

27  Docket #34, page 5, line 13 – page 6, line 3.)  According to Sorensen, in *Telemac*, multiple

28  "motions to stay pending reexamination were denied where the likely length of

1  reexamination served to exacerbate the risk of lost evidence." (*Id.* at page 5, lines 19-21).

2  In *Telemac*, one of the defendants had failed to preserve phone records and the *Telemac*

3  Court determined that further delay to could lead to further loss of information. *Telemac*,

4  450 F.Supp.2d. at 1109, 1111. Sorensen attempts to drawn parallels to the instant case,

5  (Plaintiff's Opposing Brief, Docket #34, page 6, line 4– page 9, line 8), but does not offer

6  evidence that DNNA has lost evidence or is likely to lose evidence. In fact, DNNA has

7  made affirmative efforts to preserve evidence, (Golio Decl. ¶3), including preserving

8  archived sales records for the accused products going back to the time of the product line

9  acquisition, (*Id.*), and has provided this Court and Sorensen with the identity of the foreign

10 manufacturer of the accused products. (Golio Decl. ¶4).

11      Although the Court in *Telemac* found that the defendants may have "lack[ed] the

12 resources to compensate Telemac in the event of a finding of infringement," *Id.* at 1111,

13 that is not the case with DNNA. As evidenced by the current D&B report and Mr. Golio's

14 Declaration, DNNA is an on-going business and Plaintiff's attempts to characterize it as

15 otherwise are, at best, unsubstantiated allegations.

16      Additionally, a more thorough review of *Telemac* shows the instant case to be very

17 different. To start, in *Telemac*, the reexamination request was faulty and the PTO had not

18 yet granted the request for reexamination. *Id.* at 1109, 1110. Further, the movant

19 requested the reexamination well after the case had been filed. *Id.* at 1109, 1110.

20 Additionally, the two stays were requested eighteen and twenty-seven months after the

21 claims were filed against the defendants. *Id.* at 1111. Interrogatories, responses, and

22 supplemental responses had been exchanged, documents had been produced, and at least

23 one deposition had been taken. *Id.* at 1109-1110. Finally, the close of fact discovery was

24 very near and a trial date had been set. *Id.* at 1111.

25      In the instant case, the reexamination has already been granted by the PTO along

26 with a finding of 13 new substantial questions of patentability. (Rohde Decl., Exhibit C.)

27 Once Sorensen filed an infringement case against DNNA, DNNA immediately moved for

28 the stay pending the PTO's decision following reexamination. Finally, fact discovery has

1    not yet begun in the instant case and no trial date has been set.  *Telemac* is a very different

2    case with a significant number of distinguishing characteristics that weighed on the Court's

3    decision to deny a stay.  If DNNA had delayed in requesting a stay, was at risk of going out

4    of business, had lost or failed to maintain records during litigation, or if the PTO was not

5    currently reexamining the patent-in-suit, this would be a very different situation.  However,

6    that is not the case and defendant DNNA respectfully asserts that Plaintiff Sorensen will not

7    be unduly prejudiced by a stay in this litigation.

8          **B.    The Plaintiff Delayed In Bringing This Case**

9          Sorensen alleges that he may be prejudiced if the instant litigation is now stayed

10   pending reexamination.  However, Sorensen cannot claim delay prejudice where he himself

11   delayed in initiating the present litigation by bringing this lawsuit in November of 2007

12   after first placing DNNA on notice of alleged infringement of the '184 patent in October of

13   2004.  Other courts have found that delay by the patent holder in initiating litigation

14   weighed against denying a stay.  In *Ingro v. Tyco Indus., Inc.*, the court granted a motion to

15   stay litigation pending the completion of a reexamination proceeding.  227 U.S.P.Q. 69

16   (N.D.Ill. 1985).  The court's reasoning was based in part on the fact that "especially in light

17   of plaintiffs own delay in initiating litigation, a stay pending completion of reexamination

18   proceedings, which on average involve 15.9 months from filing date to termination in the

19   PTO, will constitute neither undue delay nor unreasonable delay." *Id.* at 71.  *See also*

20   *Hewlett-Packard Co. v. Acuson Corp.*, 1993 U.S. Dist. LEXIS 6449, *5 (N.D.Cal. 1993)

21   (granting motion for stay and noting that Plaintiff's delay in seeking to protect its patented

22   interests weighed heavily against denying motion for stay).  Given his own delay, Sorensen

23   can hardly suggest that he would now be prejudiced by a stay in the present litigation

24   pending resolution of the PTO's ongoing reexamination of the '184 patent.

25         Further, as previously discussed, Sorenson now argues that he would be prejudiced

26   by a stay due to the potential for lost evidence.  If Plaintiff were truly concerned about lost

27   evidence due to turnover of personnel and ownership, Plaintiff could have filed suit in 2005

28   when the sale of DNNA's Rio technology was announced.  (Kramer Decl. ¶14.)  Instead,

1    Plaintiff delayed two more years and now asserts that the passage of time is prejudicial to

2    him.

3        **C.    Plaintiff's Proposed "Partial" Stay Is No Stay At All**

4            The "partial" stay proposed by Plaintiff is no stay at all because it would allow

5    Plaintiff to conduct wide-ranging fact discovery, thereby eliminating the benefits previously

6    recognized for staying litigation pending reexamination of a patent.  First, discovery

7    problems relating to prior art can be alleviated by the PTO reexamination.  *Broadcast*

8    *Innovation, LLC v. Charter Communs., Inc.*, 2006 U.S. Dist. LEXIS 46623, at *9-10

9    (D.Colo. Jul. 11, 2006).  It makes sense to ascertain the ultimate scope of the claims before

10   trying to figure out whether DNNA's accused products infringe the '184 patent.  Absent a

11   stay, the parties may end up conducting a significantly wider scope of discovery than

12   necessary in regards to claims which are eliminated during reexamination.  *See Target*

13   *Therapeutics, Inc. v. SciMed Life Systems, Inc.*, 33 U.S.P.Q.2d 2022, 2023, 1995 WL 20470

14   at *1 (N.D. Cal. Jan. 13, 1995).

15           Second, in those cases resulting in effective invalidity of the patent, the suit will

16   likely be dismissed.  *Broadcast Innovation,* 2006 U.S. Dist. LEXIS 46623, at *9-10.  As

17   DNNA has previously stated, the claims of the '184 patent (as well as Sorensen's ability to

18   assert infringement thereof) will live or die with the pending reexamination proceeding

19   without change.  If the present litigation is not stayed, there is a substantial risk of

20   expending enormous resources by the parties and by the Court through discovery and

21   motion practice regarding claims that may ultimately be cancelled by the PTO.

22           Third, the outcome of the reexamination may encourage a settlement without the

23   further use of the court.  And finally, the cost will likely be reduced both for the parties and

24   the court.  *Id.*   As previously discussed, there is a significant chance that the PTO will

25   invalidate the '184 patent.  This creates a very real possibility that the parties will expend

26   resources performing international discovery and possibly litigating over issues that will

27   ultimately be rendered moot by the PTO's findings.  Because granting a complete stay will

28   simplify the issues and streamline the trial, should there still be a need for a trial, the Court

1    can reduce the burdens on the parties and conserve its resources.  *See, e.g., Photoflex*

2    *Prods.*, 2006 U.S. Dist. LEXIS 37743, at *6.

3         Fourth, under DNNA's proposed, complete stay, Plaintiff would still be free to

4    pursue the manufacturer of the accused products, Liteon Technology Corp., to the extent

5    Plaintiff wishes to do so.

6         As a final matter, in Plaintiff's Opposing Brief, Sorensen requests that Defendants

7    "file a responsive pleading pursuant to Fed.R.Civ.P. Rules 8 and 12 within 10 days, to

8    allow the Court and Plaintiff to know what Defendants [sic] assertions and defenses are in

9    this case."  Plaintiff's Opposing Brief, Docket #34, page 12.  In an Order dated December

10   18, 2007 and in response to DNNA's previous motion to enlarge the time to respond,

11   Docket #28, this Court ordered that "Defendants need not answer or otherwise respond to

12   plaintiff's amended complaint unless and until ten (10) days after this Court enters an Order

13   denying the Motion to Stay."  Docket #33.  Thus, the Court has already decided the issue

14   regarding responsive pleadings.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **IV.    CONCLUSION**

2          A complete stay is appropriate under these circumstances.  For the reasons detailed

3    in DNNA's opening Brief and for the additional reasons detailed in this reply Brief, DNNA

4    respectfully requests that the Court order this case completely stayed pending completion of

5    the PTO's ongoing reexamination of the '184 patent.

6    Dated: January 4, 2008

7                                        PILLSBURY WINTHROP SHAW PITTMAN LLP
                                         DAVID A. JAKOPIN
8                                        THEODORE K. BELL
                                         DANIEL J. RICHERT
9                                        2475 Hanover Street
                                         Palo Alto, CA 94304-1114
10

11                         .
                                         By _____
12                                              Theodore K. Bell
                                         Attorneys for Defendant
13                                       DIGITAL NETWORKS NORTH AMERICA, INC.

14   Of Counsel:

15   Bradley J. Hulbert  (admitted *pro hac vice*)
     Richard A. Machonkin  (admitted *pro hac vice*)
16   Kurt W. Rohde  (admitted *pro hac vice*)
     McDonnell Boehnen Hulbert & Berghoff
17   300 South Wacker Drive
     Chicago, Illinois  60606
18   312-913-0001  Telephone
     312-913-0002  Facsimile
19   hulbert@mbhb.com
     machonkin@mbhb.com
20   rohdek@mbhb.com

21

22

23

24

25

26

27

28