1  MELODY A. KRAMER, SBN 169984
   KRAMER LAW OFFICE, INC.
2  9930 Mesa Rim Road, Suite 1600
3  San Diego, California 92121
   Telephone (858) 362-3150
4

5  J. MICHAEL KALER, SBN 158296
   KALER LAW OFFICES
6  9930 Mesa Rim Road, Suite 200
   San Diego, California 92121
7  Telephone (858) 362-3151

8

9

10 Attorneys for Plaintiff JENS ERIK SORENSEN,
   as Trustee of SORENSEN RESEARCH AND
11 DEVELOPMENT TRUST

12

13
                    UNITED STATES DISTRICT COURT
14
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
15
                            SAN FRANCISCO
16

17 JENS ERIK SORENSEN, as Trustee of      ) Case No. CV 07-05568 JSW
   SORENSEN RESEARCH AND                  )
18 DEVELOPMENT TRUST,                     )
                                          ) **PLAINTIFF'S OPPOSITION TO**
19                                        ) **DEFENDANT LEGACY SUPPORT**
                        Plaintiff         ) **SERVICES' MOTION TO SET ASIDE**
20                                        ) **ANY APPEARANCE OF DEFAULT**
       v.                                 ) **AND TO GRANT LEGACY THE SAME**
21                                        ) **ENLARGEMENT OF TIME TO**
   DIGITAL NETWORKS NORTH                 ) **ANSWER AS DNNA**
22 AMERICA, INC., a Delaware corporation; )
   LEGACY SUPPORT SERVICES, LTD.          )
23 d/b/a S2G; and DOES 1-100,             ) Date: June 13, 2008
                                          ) Time: 9:00 a.m.
24                                        ) Courtroom 2, 17th Floor
                        Defendants.       ) Judge: Hon. Jeffrey S. White
25                                        )
                                          )
26                                        )

27

28

**SUMMARY OF OPPOSITION**

Defendant Legacy Support Services's ("Legacy") motion to "set aside any appearance of default" is not ripe for review. No default has been entered yet and cannot be entered until the Court grants the partial lift of stay requested by Plaintiff (to which Legacy claims opposition). In fact, Legacy's motion was filed in violation of the stay entered in this case (Docket # 39).

Furthermore, even if default had been entered (as it should), there are no grounds to excuse Legacy for its default.

**ADDITIONAL FACTS**

Legacy never appeared in this case in any shape or form until April 30, 2008 by co-filing an Opposition to Plaintiff's Motion for Partial Lift of Stay. *Kramer Decl.* ¶ 4. Even as of this filing, Legacy has not filed or offered for filing an Answer or other responsive pleading to the Amended Complaint due to be answered no later than January 14, 2008.

The Order upon which Legacy claims it is entitled to rely was drafted by Defendant DNNA (compare Document # 27 proposed order with Document # 33 signed order) and explicitly defines "Defendant" in the Order as "Digital Networks North America, Inc." *Request for Judicial Notice* of Document Nos. 27 and 33.

There has been no suggestion, formal or informal, written or oral, prior to the filing of Plaintiff's Motion for Partial Lift of Stay that Legacy was represented by the same lawyers as DNNA or that any appearance or filings by DNNA were intended to have been made by Legacy. *Kramer Decl.* ¶ 5 and *Request for Judicial Notice* of entire court file in this case.

Defense counsel, Mr. Rohde, has misstated Ms. Kramer's position on this matter by referencing her letter dated April 16th and Mr. Rohde's response letter, but not including Ms. Kramer's April 21st letter in which she corrected Mr. Rohde's misstatements as follows. See *Kramer Decl.* ¶ 6 and Exhibit A.

> I am in receipt of your [Mr. Rohde's] letter dated today. Apparently you did not read my letter closely. It is not my contention that the Court made an error in its order, except to the extent that it did not correct a typographical error in the proposed order that DNNA sent to the Court.
>
> Document # 33 is unambiguous in its identification of the "Defendant" as Digital Networks North America, Inc. and none other. See the first sentence. You simply cannot make a good faith argument that the typographical errors should be construed in favor of a defendant who made no appearance, but is currently represented by the same counsel as the party who drafted the order.
>
> Furthermore, although you claim that Legacy relied on DNNA's typographical errors in that Order, there is no legitimate basis for that claim. The only way that argument would make sense was if your office was secretly representing Legacy in every document that it filed which explicitly and repeatedly represented itself as representing DNNA and only DNNA. I could not even find any reference to Legacy being noticed on any of DNNA's motions.
>
> On the day of our phone conversation, I gave you the benefit of the doubt that you had just overlooked the specific context in which the Order in question was issued. It is now clear that you are, in fact, trying to make arguments that are unsupported by fact or law.
>
> Let me again be clear. I consider it to be a Rule 11 violation for you to make an argument to the Court that contradicts every single written and oral representation, formal and informal, previously made to us and the Court regarding who your office represented and upon whose behalf arguments were made. If your office had any intention for DNNA's motions for extension, motion for stay, or resulting orders to accrue to the benefit of Legacy, you were grossly misrepresenting your intent at the time both to Plaintiff and to the Court.
>
> I will expect you and your colleagues to drop this frivolous argument.

*Kramer Decl.*, ¶ 7, Exhibit B.

**ARGUMENT**

I. LEGACY'S MOTION IS NOT RIPE FOR REVIEW BECAUSE PLAINTIFF HAS NOT YET OBTAINED PERMISSION FOR ENTRY OF DEFAULT AGAINST LEGACY DUE TO THE LITIGATION STAY.

"The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed.R.Civ.P. Rule 55. However, there is no legal basis for "setting aside an appearance of default" as Legacy requests the Court to do.

Plaintiff has pending a Motion for Partial Lift of Stay set for hearing on the same day as this motion. Until that Motion is granted, no further evaluation of the merits of Plaintiff's request for default nor Legacy's arguments against it should be reviewed. However, upon grant of that motion, Plaintiff is absolutely entitled to entry of default. Legacy has neither answered, attempted to answer, or requested permission to answer, the Amended Complaint.

In the meantime, however, there is no legally cognizable relief for a "motion to set aside any appearance of default."

II. PLAINTIFF IS ENTITLED TO ENTRY OF DEFAULT AGAINST LEGACY.

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, <u>the clerk must enter the party's default</u>." Fed.R.Civ.P. Rule 55(a) (emphasis).

The docket sheet in this case shows that although Legacy was required to file an answer or responsive pleading to the Amended Complaint on or before January 14, 2008, it did not file such a response. The only impediment to the entry of default was the entry of stay of this case issued <u>after</u> Legacy defaulted.

Legacy did not seek an extension of time to file such a response, nor did it reasonably rely on anything in the court file to suggest that they did not have to answer. Furthermore, although their default has now been brought to Legacy's attention, it has neither filed an answer, attempted to file an answer, nor requested leave to file an answer. Legacy has not even claimed an inability to file an answer due to the stay issuing *after* it fell into default. To the contrary, it has violated the stay by filing a motion for affirmative relief "from an appearance of default" without even promising to file an answer.

Defendant Legacy is in default and will not be entitled to relief from default after it is properly entered as set forth below.

### III. LEGACY WOULD NOT BE ENTITLED TO THE SETTING ASIDE OF DEFAULT IF SUCH A MOTION WERE PROPERLY BROUGHT.

Legacy has turned proper motion procedure on its head by asking this Court to "set aside any appearance for default" before Plaintiff has had the opportunity to request the entry of default (Plaintiff's motion for partial lift of stay for that purpose is pending), before a default has been entered, and while simultaneously objecting to a partial lift of stay to allow for entry of default. Legacy's position is procedurally problematic.

Because Legacy's improperly filed motion is pending, Plaintiff is hereby responding to the arguments in Legacy's motion as though it were a motion to set aside entry of default and using the proper standards of review for such a motion.

Federal Rule of Civil Procedure 55(c) provides that a court may set aside a default for "good cause shown." In the Ninth Circuit, the "good cause" standard that governs setting aside a default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b). *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925 (9th Cir. 2004). The "good cause" analysis involves consideration of three factors:

4.

Case No. CV 07-05568 JSW

1     (1)    whether Legacy engaged in culpable conduct that led to the default;

2     (2)    whether Legacy has a meritorious defense; or

3     (3)    whether reopening the default would prejudice Plaintiff.

*See Franchise Holding II*, 375 F.3d at 925-26. These factors are disjunctive and, thus, a district court may refuse to set aside a default if any of the three factors are true. *Id.* at 926.

Legacy's default (though not yet formally entered) should not be excused or set aside because Legacy has neither established the existence of a meritorious defense, nor shown good cause for its failure to answer the Amended Complaint.

A. <u>Legacy has not established the existence of a meritorious defense; general denials and conclusory statements of the existence of a meritorious defense are insufficient to set aside a default.</u>

The movant for an order vacating entry of default must show specific facts which would establish that the asserted defense has some probability of success on the merits. *See Franchise Holding II*, 375 F.3d at 925-26; *Cohen v. Murphey*, 222 F.R.D. 416, 418 (S.D.Cal. 2004); *Robinson v. Bantam Books, Inc.*, 49 F.R.D. 139, 140-41 (S.D.N.Y. 1970). In *Cohen*, even though the defendants filed answers after entry of default, the court refused to set aside the default where the defendants had offered no facts to support their defense. *Cohen*, 222 F.R.D. at 418. "Defendants have not offered points and authorities, declarations, or other supporting documents that would permit the court to assess the probability of a meritorious defense." *Id.* Concern underlying the requirement that a party moving to set aside a default must show the existence of a meritorious defense is to determine whether there is some possibility that the suit will have an outcome different from the result achieved by default. *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986).

A defendant who claimed only that he would present a meritorious defense at some unidentified future date "failed to present 'even a hint of a suggestion' that he

possessed a meritorious defense" and thus was not entitled to have a default against him set aside. *Mercer v. Jaffe, Snider, Raitt and Heuer, P.C.,* 730 F.Supp. 74, 79 (W.D.Mich. 1990), *aff'd* 933 F.2d 1008 (6th Cir. 1991).

It is not enough to offer conclusory statements that a dispute exists. "A mere general denial without facts to support it is not enough to justify vacating a default or default judgment." *Franchise Holding II*, 375 F.3d at 926 (*citing Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969)). Thus, general denials or conclusory statements that a meritorious defense exist are insufficient to set aside default. *See e.g., Consolidated Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F.2d 249 (4th Cir. 1967) (proper for trial court to require defendant to state underlying facts); *Nelson v. Coleman Co.,* 41 F.R.D. 7 (D.S.C. 1966); *U.S. v. One Lot or Parcel of Land, in City of Austin, Being Lot 2 Block D of Woods of Westlake*, 838 F.Supp. 318 (E.D.Tex. 1993) (mere conclusory assertion of meritorious defense insufficient); *Directv, Inc. v. Rosenberg*, 2004 WL 345523 (S.D.N.Y. 2004) (conclusory denial did not amount to meritorious defense); *Mike Rosen & Associates, P.C. v. Omega Builders, Ltd.*, 940 F.Supp. 115 (E.D.Pa. 1996) (general denial of "originality" of author's architectural work not meritorious defense in determining whether to set aside default in copyright infringement case); *Maine Nat. Bank v. F/V Cecily B.* (O.N. 677261), 116 F.R.D. 66 (D.Me. 1987); *Chandler Leasing Corp. v. UCC, Inc.*, 91 F.R.D. 81 (N.D.Ill. 1981) (movant must present a factual basis for its claim of meritorious defense); *Cohen v. Murphey*, 222 F.R.D. 416 (N.D.Cal. 2004) (failure to demonstrate potentially meritorious defense where neither answers nor motion to set aside default contained any facts supporting the defense).

Legacy has not met its burden of showing that it has a meritorious defense. Legacy has neither filed, nor offered to file an answer. The only support for its claim of the existence of a meritorious defense consists of an assertion in its brief that the

patent-in-suit is invalid[1] buttressed by the fact of the patent undergoing reexamination by the PTO. That unsupported claim does not begin to demonstrate the existence of a meritorious defense because the patent is presumptively valid and the acceptance of a patent reexamination is neither probative of patent invalidity, nor does it establish a likelihood of patent invalidity.

> [T]he grant by the examiner of a request for reexamination is not probative of unpatentability. The grant of a request for reexamination, although surely evidence that the criterion for reexamination has been met (*i.e.,* that a "substantial new question of patentability" has been raised, 35 U.S.C. § 303), does not establish a likelihood of patent invalidity.[FN2] *See Acoustical Design, Inc. v. Control Elecs. Co.,* 932 F.2d 939, 942, 18 USPQ2d 1707, 1710 (Fed.Cir.) ("initial rejection by the Patent and Trademark Office of original claims that later were confirmed on reexamination hardly justifies a good faith belief in the invalidity of the claims"), *cert. denied,* 502 U.S. 863, 112 S.Ct. 185, 116 L.Ed.2d 146 (1991).
>
>> FN2. The Annual Report of the Patent and Trademark Office for 1994 states that 89% of the reexamination requests were granted that year, but only 5.6% of the reexamined patents were completely rejected with no claims remaining after reexamination.

*Hoechst Celanese Corp. v. BP Chemical Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996). The criteria for the USPTO to accept a request for reexamination is not high.

> A prior art patent or printed publication raises a substantial question of patentability where there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication important in deciding whether or not the claim is patentable. . . . **It is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for a "substantial new question of patentability" to be present as to the claim.** Thus, "a substantial new question of

---

[1] Legacy's Memo, page 5, line 1. In footnote 2, Legacy explicitly states that is "not offer[ing] evidence of its prospective invalidity defense as a responsive pleading."

7.

patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications. . . .

*Request for Judicial Notice,* MPEP 2242 (emphasis in original).

It is easy to get the USPTO to reexamine a patent. The USPTO's "*Ex Parte* Reexamination Filing Data – March 31, 2008" report reflects 92% of ex parte reexamination requests are granted. However, the same report shows that only 10% of reexaminations result in cancellation of all claims. *Kramer Decl.* ¶ 7, Exhibit B.

### B. Legacy has not shown good cause for its failure to answer the Amended Complaint when required.

"If a defendant 'has received actual or constructive notice of the filing of the action and failed to answer,' its conduct is culpable." *Franchise Holding II*, 375 F.3d at 926 (*quoting Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988).

The district court in *Franchise Holding II* found that, due to the high stakes involved (defendant had defaulted on its restaurant business loans), defendant's failure to seek an extension of time to respond to the complaint was evidence of culpable conduct. Defendant disputed this, asserting that the parties had reached a side agreement to extend filing deadlines while the parties were in negotiations. Plaintiff denied that any such agreement ever existed. The Ninth Circuit found defendant culpable for the entry of default even if such a side agreement had existed. The agreement allegedly stated that plaintiff would not pursue litigation while negotiations were continuing in good faith. Plaintiff, however, had explicitly informed defendant via letter that negotiations had broken down and that it was proceeding with litigation. Regardless, defendant failed to file anything until after plaintiff began collecting on the default judgment, and then defendant only filed a motion to set aside entry of default and default judgment. *Franchise Holding II*, 375 F.3d at 926.

1
2
3
4
5
6
7

The Ninth Circuit then likewise held that defendant had not established excusable neglect based on similar reasons supporting its conclusions regarding culpability. "The entry of default and the default judgment were squarely within [defendant's] control. [Defendant] received actual notice of both the action and [plaintiff's] intent to pursue it. [Defendant] nevertheless failed to file an extension of anything else with the district court until [plaintiff] began to collect on the default judgment." *Franchise Holding II*, 375 F.3d at 927.

8
9
10
11
12
13
14
15
16

In *Hunt v. King*, the court found that the defendant's failure to answer the complaint "was willful and demonstrated a flagrant disregard for the authority of the court," permitting the district court to refuse to set aside entry of default on good cause grounds. *Hunt v. Kling Motor Co.*, 841 F.Supp. 1098, 1106 (D.Kan. 1993), *aff'd* 65 F.3d 178 (10th Cir. 1995). In *Hunt*, there was no evidence demonstrating that the defendant did not have actual knowledge of the complaint, the summons explicitly stated that failure to answer within 20 days would result in entry of default judgment, and the defendant never filed an answer or otherwise pled to the plaintiff's complaint. *Id.*

17
18
19
20
21
22
23

In this case, there is no evidence demonstrating that Legacy did not have actual knowledge and receipt of the Amended Complaint and the accompanying summons providing that failure to answer within 20 days would result in entry of default judgment. The entry of default has been squarely within Legacy's control. Legacy never filed an answer or otherwise pled to the Amended Complaint and does not, even now that its default has been brought to the attention of the Court, offer to file an answer.

### 1.  *Legacy and/or Its Attorneys Engaged In Culpable Conduct That Led To Legacy's Default.*

Legacy's claimed excuse for not filing an answer is a mere self-serving attorney statement that Legacy relied on an order that its alleged counsel at the time

1  drafted. That order makes no reference whatsoever to Legacy. It unambiguously
2  defines the term "Defendant" as DNNA, and then uses the term "Defendant," in its
3  singular form, throughout the order, with the exception of two places where the
4  defined term "Defendant" is made plural by adding an "s." Legacy "hangs its hat"
5  on these two occasions that had an "s." If this is the best that Legacy can offer as an
6  explanation for its failure to respond to the complaint, Legacy needs to find a
7  different hat. Legacy's reliance is directly contradictory to the explicit wording and
8  context of that order. Mr. Rohde's statement that both he and Legacy "relied on the
9  plain language of the Order" in determining not to answer is a weak excuse, at best.

10        The true measure of a court order is not an isolated phrase appearing therein,
11  but its effect when considered as a whole, and the same rules of interpretation apply
12  as in ascertaining the meaning of any other writing. *Roraback v. Roraback,* 101 P.2d
13  772, 774 (Cal.App. 3 Dist. 1940); *Concerned Citizens Coalition of Stockton v. City*
14  *of Stockton*, 26 Cal.Rptr.3d 735, 739 (Cal.App.3.Dist. 2005); *Western Greyhound*
15  *Lines v. Superior Court of Los Angeles County*, 331 P.2d 793, 795 (Cal.App. 1958).
16  "The proper construction of a court's decree is not to be obtained by seizing upon
17  isolated parts of the decree; rather it is to be determined by an examination of the
18  issues made and intended to be submitted and what the decree was really designed to
19  accomplish. Its scope is to be determined by what preceded it and what it was
20  intended to execute." *N.L.R.B. v. Edward G. Budd Mfg. Co.*, 169 F.2d 571, 575 (6th
21  Cir. 1948); *see also Hendrie v. Lowmaster*, 152 F.2d 83, 85 (6th Cir. 1946) ("Where a
22  judgment is susceptible of two interpretations, it is the duty of the court to adopt that
23  one which renders it more reasonable, effective and conclusive in the light of the
24  facts and the law of the case."); *Talman v. Talman*, 39 Cal.Rptr. 863, 866
25  (Cal.App.2.Dist. 1964). If the language of a court order is uncertain, reference may
26  be had to circumstances surrounding, and the court's intention in making, the order.
27  *Gardner v. Rich Mfg. Co.*, 158 P.2d 23, 31 (Cal.App. 2 Dist. 1945); *Concerned*
28  *Citizens Coalition of Stockton v. City of Stockton*, 26 Cal.Rptr.3d 735, 739

1  (Cal.App.3.Dist. 2005). "In construing an order, resort may be had to the notice of motion." *Western Greyhound Lines v. Superior Court of Los Angeles County*, 331 P.2d 793, 795 (Cal.App. 1958).

The Order (Document # 33) begins with the following statement of definition – "Defendant DIGITAL NETWORKS NORTH AMERICA, INC. ("Defendant") has moved . . . to enlarge time . . ." (Document # 33, page 2:1). This is consistent with Document # 28, the motion to which it referred, which refers to the moving party as DNNA at least 13 times and never refers to Legacy (see Document # 28, throughout). This is also consistent with the motion's declaration (Document # 29) which refers to DNNA no fewer than 15 times, and never refers to Legacy.

After the initial definition, the Order again refers to a singular "Defendant" or the singular possessive "Defendant's" at lines 4, 5, 6, and 8. It is only at lines 11 and 12 that it switches to "Defendants' " and "Defendants," a meaningless plural in light of the context of a motion filed by only one party. There is nothing in the notice of motion, motion, accompanying paperwork, or other parts of the proposed order that in any way mention Legacy.

The only logical interpretation of that Order is that it was intended to cover DNNA and only DNNA. Legacy had no part of it.

If Plaintiff had drafted the order, perhaps Legacy would have a colorable argument. That is not the case. Instead, Legacy is trying to sell the Court on the story that when its alleged counsel at the time referred to DNNA, and only DNNA, in page after page of the motion, declaration, and proposed order, and in every single aspect of pleading from identification of party representation to substantive argument, that Legacy's alleged counsel at the time actually meant both DNNA *and* Legacy.

There is no evidence before the Court from any officer or employee of Legacy as to Legacy's belief or reliance. Mr. Rohde's statement is the height of self-serving unreliability and cannot be made the evidentiary basis for Legacy's requested relief.

If Legacy wanted a delay in filing its answer, it should have filed such a request along with DNNA. It did not do so. If Legacy desired a stay of the litigation, it should have requested one or joined DNNA's request. It did not. There is no colorable reason to believe that Legacy relied on the Order that it now claims to have relied on.

There is no evidence that Legacy "relied" upon the two inconsistent plural forms of the term "Defendant." There is only a declaration of Legacy's counsel who drafted the Order with the inconsistent language and context. Glaringly absent is evidence from Legacy itself that it contacted Mr. Rohde at the beginning of this lawsuit and requested that he represent Legacy and, as with DNNA, request an extension of time for Legacy to respond to the complaint. In seeking to "set aside the appearance of default," Legacy should have offered far more than its counsel's declaration, which, in its best light, offers an excuse of questionable credibility.

### C. Legacy's disregard for the obligations of a party to respond to a complaint prejudices Plaintiff.

Legacy was properly served with a summons and amended complaint and obviously made an affirmative decision to not defend. It did not file a timely answer, did not request an extension of time to respond, and did not request a stay pending reexamination. It did nothing. Thus, Plaintiff is entitled to an entry of default.

Plaintiff will be prejudiced if it is not allowed to receive the benefit of a default when the Federal Rules of Civil Procedure dictate Plaintiff's entitlement. If Legacy believes that the default is improper, it would have the right to present a properly supported motion for that purpose. However, as demonstrated above, it has no entitlement to forgiveness of its default. It has not shown any good excuse for failing to comply with the answer deadline and fails to show a meritorious defense. Plaintiff is required to abide by the Federal Rules of Civil Procedure; so must the Defendants, including Legacy.

1    Even now, when its default has been brought to the attention of the Court, Legacy has not offered to Answer the Amended Complaint. Rather, it merely sets forth a frivolous argument claiming reliance on an out-of-context "s" that its attorneys full well know do not make the Order applicable to Legacy, and violated the existing stay by filing a motion for relief without leave of Court.

Allowing Legacy to escape the known and natural consequences of failing to answer the Amended Complaint – a default – and allowing Legacy to turn back the clock and be in the same position it would have been had it not defaulted, without requiring that Legacy meet the legal standards for setting aside a default, is prejudicial to Plaintiff and makes Rule 55 meaningless.

## CONCLUSION

Legacy's motion to "set aside any appearance of default" is not ripe for review until Plaintiff is allowed to have entry of default (to which is it entitled) which is predicated on Plaintiff's co-pending motion for partial lift of stay for entry of default (to which Legacy claims opposition). In fact, Legacy's motion was filed in violation of the stay entered in this case (Docket # 39).

Even if the Court slogs past the stay violation and other procedural problems with this motion, Legacy is definitively in default and would not be entitled to relief from default anyway. Legacy has neither demonstrated the existence of a meritorious defense, nor demonstrated good cause for its failure to file an answer when due. Requiring that only Plaintiff follow the procedural rules of court, and not also expecting the same behavior from Defendants, is unfair and prejudicial to Plaintiff.

//
//

13.

Case No. CV 07-05568 JSW

1 DATED this Friday, May 23, 2008.

                JENS ERIK SORENSEN, as Trustee of
                SORENSEN RESEARCH AND DEVELOPMENT
                TRUST, Plaintiff

                /s/ Melody A. Kramer
                J. Michael Kaler, Esq.
                Melody A. Kramer, Esq.
                Attorneys for Plaintiff

# PROOF OF SERVICE

I, Melody A. Kramer declare: I am and was at the time of this service working within in the County of San Diego, California. I am over the age of 18 year and not a party to the within action. My business address is the Kramer Law Office, Inc., 9930 Mesa Rim Road, Suite 1600, San Diego, California, 92121. I am a member of the State Bar of California and the Bar of this Court.

On May 23, 2008, I served on the parties to this action the following documents:

**PLAINTIFF'S OPPOSITION TO DEFENDANT LEGACY SUPPORT SERVICES' MOTION TO SET ASIDE ANY APPEARANCE OF DEFAULT AND TO GRANT LEGACY THE SAME ENLARGEMENT OF TIME TO ANSWER AS DNNA**

**DECLARATION OF MELODY A. KRAMER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT LEGACY SUPPORT SERVICES' MOTION TO SET ASIDE ANY APPEARANCE OF DEFAULT AND TO GRANT LEGACY THE SAME ENLARGEMENT OF TIME TO ANSWER AS DNNA**

**EVIDENTIARY OBJECTION TO DECLARATION OF KURT W. ROHDE (DOCKET #53)**

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT LEGACY SUPPORT SERVICES' MOTION TO SET ASIDE ANY APPEARANCE OF DEFAULT AND TO GRANT LEGACY THE SAME ENLARGEMENT OF TIME TO ANSWER AS DNNA**

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL LIFT OF STAY, ENTERING DEFAULT AGAINST DEFENDANT LEGACY SUPPORT SERVICES, AND DENYING MOTION TO SET ASIDE APPEARANCE OF DEFAULT BY LEGACY SUPPORT SERVICES**

| PERSON(S) SERVED | PARTY(IES) SERVED | METHOD OF SERVICE |
|---|---|---|
| David A. Jakopin<br>Theodore K. Bell<br>Daniel J. Richert<br>Pillsbury Winthrop et al<br>2475 Hanover Street<br>Palo Alto, CA 94304-1114<br>650-233-4545 FAX | Defendant Digital Networks North America, Inc.; and<br>Defendant Legacy Support Services, Ltd. | Email – Pleadings Filed with the Court |
| Bradley J. Hulbert<br>Richard A. Machonkin<br>Kurt W. Rohde<br>300 South Wacker Drive<br>Chicago, IL 60606 | Defendant Digital Networks North America, Inc.; and<br>Defendant Legacy Support Services, Ltd. | Email – Pleadings Filed with the Court |

1
2
3      ☐ (Personal Service) I caused to be personally served in a sealed envelope hand-delivered to the office of counsel during regular business hours.
4
5      ☐ (Federal Express) I deposited or caused to be deposited today with Federal Express in a sealed envelope containing a true copy of the foregoing documents with fees fully prepaid addressed to the above noted addressee for overnight delivery.
6
7      ☐ (Facsimile) I caused a true copy of the foregoing documents to be transmitted by facsimile machine to the above noted addressees. The facsimile transmissions were reported as complete and without error.
8
9
10     ☐ (Email) I emailed a true copy of the foregoing documents to an email address represented to be the correct email address for the above noted addressee.
11
12     ☒ (Email--Pleadings Filed with the Court) Pursuant to Local Rules, I electronically filed this document via the CM/ECF system for the United States District Court for the Southern District of California.
13
14   I declare that the foregoing is true and correct, and that this declaration was executed on Friday, May 23, 2008, in San Diego, California.
15
16                                           /s/ Melody A. Kramer
                                             _____
17                                           Melody A. Kramer
18
19
20
21
22
23
24
25
26
27
28

16.                                                                    Case No. CV 07-05568 JSW