1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   DAVID A. JAKOPIN #209950
2    david.jakopin@pillsburylaw.com
   DANIEL J. RICHERT #232208
3    daniel.richert@pillsburylaw.com
4  2475 Hanover Street
   Palo Alto, CA 94304-1114
5  Telephone: (650) 233-4500
   Facsimile: (650) 233-4545
6
7  MCDONNELL BOEHNEN HULBERT & BERGHOFF LLP
   BRADLEY J. HULBERT (admitted *pro hac vice*)
8    hulbert@mbhb.com
   RICHARD A. MACHONKIN (admitted *pro hac vice*)
9    machonkin@mbhb.com
   KURT W. ROHDE (admitted *pro hac vice*)
10   rohdek@mbhb.com
11  300 South Wacker Drive
    Chicago, IL 60606-6709
12  Telephone: (312) 913-0001
    Facsimile: (312) 913-0002
13
14  Attorneys for Defendants
    DIGITAL NETWORKS NORTH AMERICA, INC.
15  LEGACY SUPPORT SERVICES, LTD. d/b/a S2G

16              UNITED STATES DISTRICT COURT

17            NORTHERN DISTRICT OF CALIFORNIA

18  _____
                                      )        No. 07 CV 5568  JSW
19  JENS ERIK SORENSEN, as Trustee of )
    SORENSEN RESEARCH AND             )        **DEFENDANT LEGACY'S REPLY TO**
20  DEVELOPMENT TRUST,                )        **PLAINTIFF'S OPPOSING BRIEF TO**
                                      )        **LEGACY'S MOTION TO SET ASIDE**
21              Plaintiff,            )        **ANY APPEARANCE OF DEFAULT**
          v.                          )        **AND TO GRANT LEGACY THE SAME**
22                                    )        **ENLARGEMENT OF TIME TO**
    DIGITAL NETWORKS NORTH            )        **ANSWER AS DNNA**
23  AMERICA, INC., a Delaware         )
    corporation; LEGACY SUPPORT       )        Date: June 13, 2008
24  SERVICES, LTD. d/b/a S2G; and DOES)        Time: 9:00 A.M.
    1-100,                            )        Ctrm: 2, 17th Floor
25              Defendants.           )        Judge: Hon. Jeffrey S. White
                                      )
26  _____)

27

28

701094861v1

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................. 1

II.   ARGUMENT ....................................................................................................................... 2

      A.    Any Alleged Appearance of Default by Legacy Should Be

            Set Aside ................................................................................................................. 2

            (1)    Legacy Has A Meritorious Defense ............................................................. 3

            (2)    Legacy Has Not Engaged In Culpable Conduct ........................................... 4

            (3)    There is No Prejudice to Sorensen .............................................................. 6

      B.    The Court Should Grant Legacy the Same Enlargement of

            Time to Respond As DNNA ...................................................................................... 7

      C.    Sorensen's Evidentiary Objections to the Declaration of Kurt

            W. Rohde are Wholly Without Merit ........................................................................ 7

III.  CONCLUSION .................................................................................................................... 8

701094861v1

1

## TABLE OF AUTHORITIES

2

### Cases

3

*Franchise Holding II, LLC v. Huntington Rests. Group, Inc.*
4   375 F.3d 922 (9th Cir. 2004) ....................................................................... 2

5
*Hawaii Carpenters' Trust Funds v. Stone*
6   794 F.2d 508 (9th Cir. 1986) ....................................................................... 3

7   *In re Stone*
8   588 F.2d 1316 (10th Cir. 1978) ................................................................... 3

*Mendoza v. Wight Vineyard Management*
9   783 F.2d 941 (9th Cir. 1986) ....................................................................... 2

10
*Pioneer Investment*
11   507 U.S. 380, 113 S.Ct. 1489 (1993) ............................................................ 5

12   *TCI Group Life Ins. Plan v. Knoebber*
13   224 F.3d 691 (9th Cir. 2001) ............................................................. 3, 5, 6

14

### Rules and Regulations

15

16   Fed. R. Civ. P. 55(c) ..................................................................................... 1, 2

17   Fed. R. Civ. P. 60(a) ........................................................................................ 6

18   35 U.S.C. § 154(a)(2) ...................................................................................... 4

19   37 C.F.R. § 1.530(j) ......................................................................................... 4

20

21

### Case Docket Documents

22   Docket #12 (Exhibit C) (Amended Complaint For Patent Infringement,
23           Claim Chart) ........................................................................................ 4

24   Docket #33 (Order Granting Defendant's Motion Pursuant to Civil L.R. 6-3
           To Enlarge Time To Respond To The Amended Complaint
25           Pending Motion To Stay) ................................................... 1, 2, 5, 7, 8

26   Docket #34 (Plaintiff's Opposition To Defendant Digital Networks North
           America, Inc.'s Motion For Stay) ....................................................... 5

27

28

– ii –

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Docket #39 (Order Granting Defendant's Motion To Stay Litigation Pending Reexamination of Patent-In-Suit) .................................................................................................. 1

Docket #45 (Notice Of Motion And Motion For Partial Lift Of Stay As To Defendant Legacy Support Services For Purposes of Entering Default)........................................................................................................................ 1

Docket #52 (Memorandum of Points and Authorities In Support Of Defendant Legacy Support Services' Motion To Set Aside Any Appearance Of Default And To Grant Legacy The Same Enlargement Of Time To Answer As DNNA) .................................................... 2, 3, 5

Docket #55-2 (Evidentiary Objection To Declaration Of Kurt W. Rohde (Docket #49) .......................................................................................................... 7

Docket #53 (Declaration Of Kurt W. Rohde In Support Of (1) Defendants' Memorandum In Opposition To Plaintiff's Motion For Partial Lift Of Stay As To Legacy Support Services For Purposes Of Entering Default; And (2) Legacy Support Services' Motion To Set Aside Any Appearance Of Default And To Grant Legacy The Same Enlargement Of Time To Answer As DNNA) .......................................... 8

Docket #60 (Defendant's Response To Plaintiff's Evidentiary Objection to Declaration of Kurt W. Rohde) ........................................................................ 7, 8

Docket #61 (Plaintiff's Opposition to Defendant Legacy Support Services' Motion To Set Aside Any Appearance of Default And To Grant Legacy The Same Enlargement Of Time To Answer As DNNA) .................................................................................................. 3, 4, 5, 6, 8

Docket #61-2 (Exhibit B) (USPTO's "*Ex Parte* Reexamination Filing Data – March 31, 2008")................................................................................................ 2, 3, 4

Docket #61-4 (Evidentiary Objection to Declaration of Kurt W. Rohde) ................................ 7, 8

701094861v1

1    **I.      INTRODUCTION**

2          Defendant Legacy Support Services ("Legacy"), by its Motion, has requested the

3    Court to grant an Order setting aside any appearance of default by Legacy in the current

4    litigation and giving Legacy the same enlargement of time to Answer as Digital Networks

5    North America, Inc. ("DNNA").

6          In opposing Legacy's Motion, Plaintiff Jens Erik Sorensen ("Sorensen") has

7    suggested that Legacy's Motion was filed in violation of the stay entered in this case

8    (Docket #39).  Sorensen's argument could hardly be more disingenuous.  It was Sorensen

9    who "fired the first shot" by filing a motion for a partial lift of the Court's stay order

10   (Docket #45).  Legacy's Motion was filed in response to Sorensen's motion simply to

11   provide alternative grounds for maintaining the *status quo* in this case.  In particular,

12   Legacy's Motion demonstrates that, even if the Court were to lift the stay, there is good

13   cause for setting aside any default under Federal Rule of Civil Procedure 55(c).  Thus,

14   regardless how the Court's Time Extension Order (Docket #33) is interpreted, there is no

15   rational basis for placing Legacy on a different procedural footing than DNNA.

16        Good cause exists for setting aside any default because:  (i) Legacy has a

17   meritorious defense of the patent's invalidity, as evidenced by the statistically small chance

18   that Sorensen's now-expired patent will be able to survive both on-going reexaminations

19   with all claims confirmed; (ii) Legacy did not engage in "culpable" conduct because

20   Legacy reasonably relied on the plain language of the Court's Time Extension Order, the

21   reasonableness of which is supported by Sorensen's own conduct; and (iii) Sorensen will

22   not be prejudiced; indeed, Sorensen has not even attempted to show that he will suffer any

23   legally cognizable prejudice.

24        Sorensen's attempt to obtain a default against Legacy is a misguided effort to

25   circumvent the Court's stay order and avoid litigating its case against Legacy on the merits.

26   This matter has been stayed since January pending reexamination of the patent-in-suit.

27   Legacy is not an absentee defendant, but is represented by counsel in this matter.  If and

28

– 1 –

1   when the stay is lifted and this litigation proceeds, Legacy intends to vigorously defend

2   itself.  Legacy's co-defendant, DNNA, is not required to file an answer in this case until

3   after the stay has been lifted.  Sorensen's request to lift the stay and enter a default serves

4   no proper purpose and should be denied.

5   **II.    ARGUMENT**

6       **A.    Any Alleged Appearance of Default by Legacy Should Be Set Aside**

7           Legacy is clearly not in default because the Court's Time Extension Order stated

8   that "*Defendants* need not answer or otherwise respond to plaintiff's amended complaint

9   unless and until ten (10) days after this Court enters an Order denying the Motion to Stay."

10  *See* Docket #33 at 2 (emphasis added).  Sorensen disputes the plain language of the Court's

11  Time Extension Order.  However, even under Sorensen's interpretation of the Time

12  Extension Order, Legacy has established that good cause exists under Federal Rule of Civil

13  Procedure 55(c) for setting aside any default.  *See* Docket #52.

14          The "good cause" analysis considers three factors:  (i) whether the party has

15  engaged in culpable conduct that led to default; (ii) whether the party has a meritorious

16  defense; or (iii) whether reopening default would prejudice opponent.  *Franchise Holding*

17  *II, LLC v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004).  These

18  factors are disjunctive.  *Id.* at 926.  However, Legacy has established that each of these

19  factors weighs heavily in favor of setting aside any default.  Moreover, the law is clear that,

20  where timely relief is sought and the movant has a meritorious defense, any doubt should be

21  resolved in favor of the motion to set aside the default so that the case may be decided on

22  its merits.  *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945-46 (9th Cir. 1986).  The

23  Court's discretion is especially broad when entry of default, rather than a default judgment,

24  is being set aside.  *Id.* at 945.

25          Sorensen's opposition argues that Legacy has not established the existence of a

26  meritorious defense.  However, Sorensen's own reexamination statistics show otherwise.

27  *See* Docket #61-2 Ex. B.  With two reexamination proceedings pending against Sorensen's

28

– 2 –

1    patent, reexamination statistics indicate less than a 7% chance that the patent will survive

2    both reexaminations with all claims confirmed.  Thus, the invalidity of Sorensen's patent is

3    not only a meritorious defense, but also the likely result of at least one of the now-pending

4    reexaminations.

5        Sorensen's arguments with respect to the other two factors are also meritless.  With

6    respect to the "culpable conduct" factor, Sorensen cannot avoid the fact that Legacy

7    reasonably relied on the Court's Time Extension Order that facially applied to all

8    Defendants.  With respect to the final factor, Sorensen has not even attempted to argue any

9    legally cognizable prejudice.

10                    **(1)    Legacy Has A Meritorious Defense**

11        Legacy has asserted the invalidity of Sorensen's patent as a meritorious defense.

12   *See* Docket #52 at 4-5.  In addition, Legacy has presented the two on-going reexaminations

13   of the patent—in which the United States Patent and Trademark Office ("USPTO") found

14   more than 20 substantial new questions of validity—as evidence to back up Legacy's

15   invalidity defense.  *Id.*

16        Amazingly, despite this evidence, Sorensen argues that Legacy's invalidity defense

17   is "unsupported."  *See* Docket #61 at 7.  However, Legacy is not required to prove its

18   invalidity defense at this stage of the litigation.  Instead, Legacy needs only to demonstrate

19   facts or law showing that "a sufficient defense is assertible."  *TCI Group Life Ins. Plan v.*

20   *Knoebber*, 244 F.3d 691, 700 (9th Cir. 2001) (quoting *In re Stone*, 588 F.2d 1316, 1319 n.2

21   (10th Cir. 1978)).  Put another way, the relevant determination is "whether there is some

22   possibility that the outcome of the suit after a full trial will be contrary to the result

23   achieved by the default."  *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th

24   Cir. 1986).  The evidence of invalidity provided by the two on-going reexaminations of

25   Sorensen's patent easily meets that standard.

26        To try to downplay the significance of these reexaminations, Sorensen presents

27   reexamination statistics from the USPTO.  *See* Docket #61-2 Ex. B.  In particular, Sorensen

28

– 3 –

1  seizes on the statistic that only 10% of reexaminations result in cancellations of all claims.

2  *See* Docket #61 at 8.  However, those same statistics also show that: 64% of the patents

3  survived reexamination with claim changes; and only 26% of all reexamination certificates

4  were issued with all claims confirmed.  *See* Docket #61-2 Ex. B, ¶ 9.  In this case, Sorensen

5  cannot hope to survive reexamination by amending the claims because Sorensen's patent

6  expired on February 5, 2008.[1]  The USPTO's rules do not allow the claims of an expired

7  patent to be amended in reexamination:

8        *No enlargement of claim scope*.  No amendment may enlarge the scope of
         the claims of the patent or introduce new matter.  **No amendment may be**
9        **proposed for entry in an expired patent.  Moreover, no amendment,**
         **other than the cancellation of claims, will be incorporated into the**
10        **patent by a certificate issued after the expiration of the patent.**

11  37 C.F.R. § 1.530(j) (emphasis added).

12       Thus, Sorensen's only hope of prevailing requires that its patent will be one of the

13  26% of patents that survive reexamination with all claims confirmed.[2]  However, there are

14  now **two** on-going reexaminations of Sorensen's patent.  Assuming that each reexamination

15  has a 26% chance of an outcome in which Sorensen's patent has all of its claims confirmed,

16  then the probability that Sorensen's patent will survive both reexaminations with all claims

17  confirmed would be ***less than 7%***.[3]

18       When one takes into account the facts that Sorensen's patent has expired and two

19  reexaminations are on-going, Sorensen's own reexamination statistics indicate that

20  Legacy's invalidity defense is not only meritorious—it is a defense with a substantial

21  likelihood of prevailing.

22  //

23  //

24  //

25  ―――――――――――――
   [1] *See* 35 U.S.C. § 154(a)(2).

26  [2]  It is theoretically possible that Sorensen's patent could survive reexamination by cancelling some claims but
   not others.  However, Sorensen's claim chart purports to show infringement of only claim 1, the broadest

27  claim.  *See* Docket #12 Ex. C.  If any claim were to be cancelled during reexamination it would be claim 1 (as
   the broadest claim), and such cancellation could well bring Sorensen's infringement allegations to an end.

   [3]  As a matter of simple arithmetic, 26% of 26% is 6.76%.

28   

1        **(2)    Legacy Has Not Engaged In Culpable Conduct**

2        Sorensen's opposition suggests that the mere fact that Legacy received the

3    Amended Complaint and did not answer shows that Legacy engaged in "culpable conduct."

4    *See* Docket #61 at 8-9.  That, however, is not the law:

5        [O]ne might think, reading this standard out of context, that a litigant who
         receives a pleading, reads and understands it, and takes no steps to meet the
6        deadline for filing a responsive pleading acted intentionally in failing to
         answer, without more, and therefore cannot meet the culpability standard.
7
         If that were our standard under Rule 60(b)(1), it would have to be revised
8        after *Pioneer Investment* [507 U.S. 380 (1993)].

9    *TCI Group*, 244 F.3d at 697.  A failure to answer is ***not*** necessarily "culpable" when there

10   is a credible, good faith explanation that negates any intention to take advantage of the

11   opposing party, interfere with judicial decision-making, or otherwise manipulate the legal

12   process.  *Id.* at 697-98.  Instead, conduct is "culpable" when there is ***no*** explanation for a

13   default inconsistent with a devious, deliberate, willful, or bad faith failure to respond.  *Id.* at

14   698.

15       In this case, Legacy ***has*** a good faith explanation for why Legacy did not answer

16   Sorensen's Amended Complaint.  Legacy reasonably relied on the Court's Time Extension

17   Order, which stated "*Defendants* need not answer or otherwise respond to plaintiff's

18   amended complaint unless and until ten (10) days after this Court enters an Order denying

19   the Motion to Stay."  *See* Docket #33 (emphasis added); Docket #52 at 3-4.

20       Although Sorensen tries to attack the credibility of this explanation, Sorensen's own

21   actions suggest that Sorensen similarly understood that the Court's Time Extension Order

22   applied to Legacy.  In its Opposition to DNNA's Motion for Stay, which was filed nine

23   days after the Court's Time Extension Order, Sorensen specifically requested that the Court

24   "require *Defendants* to respond to the Amended Complaint."  Docket #34 at 11 (emphasis

25   added).  If Sorensen had believed that the Court's Time Extension Order applied only to

26   DNNA, Sorensen would not have made this request because a Court order would not have

27

28

– 5 –

701094861v1

1    been required for Legacy to respond to the Amended Complaint.  Thus, Sorensen's own

2    actions support Legacy's good faith explanation.

3            In addition, though Sorensen now contends that the reference to "Defendants" in the

4    Court's Time Extension Order is a typographical error, Sorensen made no attempt to correct

5    this purported error.  In this regard, the Federal Rules of Civil Procedure provide for the

6    correction of typographical errors:

7            The court may correct a clerical mistake or a mistake arising from oversight
        or omission whenever one is found in a judgment, order, or other part of the
8        record.  The court may do so on motion or on its own, with or without
        notice.
9

10   Fed. R. Civ. P. 60(a).  However, Sorensen has not made any attempt to invoke Rule 60(a).

11   Sorensen's failure to do so is further evidence that Sorensen did not consider the

12   "Defendants" language in the Court's Time Extension Order to be a typographical error,

13   which further supports the credibility of Legacy's good faith explanation.

14           Legacy's reliance on the plain language of the Court's Time Extension Order can in

15   no way be deemed "culpable."  To hold otherwise would be contrary to the integrity of the

16   legal process that the "culpable conduct" standard is intended to uphold.

17           **(3)    There is No Prejudice to Sorensen**

18           Sorensen argues that he will be prejudiced if he is "not allowed to receive the

19   benefit of a default."  *See* Docket #61 at 12.  However, merely being forced to litigate on

20   the merits cannot be considered prejudicial for purposes of lifting a default.  *TCI Group*,

21   244 F.3d at 701.  Instead, the standard of prejudice is whether the plaintiff's ability to

22   pursue his claim will be hindered.  *Id.*  Sorensen has made no attempt to show any such

23   prejudice.  Accordingly, this factor clearly weighs in favor of Legacy.

24           **B.    The Court Should Grant Legacy the Same Enlargement of Time to
            Respond As DNNA**
25

26           The parties have presented differing views regarding the Court's Time Extension

27   Order.  However, there can be no dispute that the Court considered it to be in the interest of

28

                                        – 6 –

1    judicial economy to stay at least DNNA's requirement to respond to the Amended

2    Complaint until the Court rules upon the Motion to Stay. *See* Docket #33 at 2. Sorensen

3    has offered no valid reason why the interests of judicial economy would be served by a

4    different outcome for Legacy. To the contrary, Sorensen has presented no evidence that he

5    will be prejudiced by maintaining the *status quo* in this case. Because Sorensen will not be

6    prejudiced in any legally cognizable way by placing Legacy and DNNA on the same

7    procedural footing, Legacy respectfully requests the Court to issue an Order that makes

8    clear that Legacy has the same time to respond to the Amended Complaint as DNNA.

9        **C.    Sorensen's Evidentiary Objections to the Declaration of Kurt W. Rohde
            are Wholly Without Merit**

10

11       Sorensen filed an Evidentiary Objection to Mr. Rohde's Declaration (Docket #55-2)

12    to which Defendants have previously responded (Docket #60). Sorensen has now filed a

13    *second* Evidentiary Objection to Mr. Rohde's Declaration (Docket #61-4). For the most

14    part, the Second Evidentiary Objection repeats the objections in the First Evidentiary

15    Objection (to which Defendants have already responded). However, there is some new

16    material. Having been shown that his objections have neither factual nor legal support,

17    Sorensen has resorted to "pounding on the table." Specifically, Sorensen now suggests that

18    Mr. Rohde should be questioned about the contents of his declaration. *See* Docket #61-4

19    at 2.

20       Sorensen's personal attack on Mr. Rohde's credibility is shameful. Moreover, it

21    appears to be based on a mistaken assumption that Mr. Rohde drafted the Time Extension

22    Order that the Court signed and entered:

23           "Reasonable reliance" on an out-of-context "s" that you personally put in a
             document relating to something else entirely should not be accepted on mere
24           self-serving statement.

25    *See* Docket #61-4 at 2.[4] However, Mr. Rohde's Declaration (Docket #53) does not state

26    that Mr. Rohde drafted the document. Sorensen has simply invented this "fact" (and

27    ────────────────
      [4]  Sorensen's opposition brief also refers to "a declaration of Legacy's counsel who drafted the Order with the
      inconsistent language and context." *See* Docket #61 at 12.

28
                                                – 7 –

1   invented it incorrectly).  As such, Sorensen's extraordinary request must be rejected out of

2   hand.

3        Sorensen has no basis for excluding the evidence of Legacy's reasonable reliance on

4   the plain language of the Court's Time Extension Order (Docket #33), the credibility of

5   which is buttressed by Sorensen's own actions.  For the reasons set forth herein, and in

6   Docket #60, Sorensen's evidentiary objections should be overruled in their entirety.

7   **III.    CONCLUSION**

8        The time has come for Sorensen to accept that this litigation has been stayed

9   pending reexamination of Sorensen's patent and to accept that the interests of judicial

10  economy are best served by waiting for the reexamination of Sorensen's patent to be

11  concluded before requiring any Defendant to respond to Sorensen's Amended Complaint.

12       Under the plain language of the Court's Time Extension Order, Legacy is not in

13  default.  Even if Legacy were to be deemed in default, any appearance of default should be

14  set aside because:  (i) Legacy has a meritorious defense of the patent's invalidity, as

15  evidenced by the statistically small chance that Sorensen's now-expired patent will be able

16  to survive both on-going reexaminations with all claims confirmed; (ii) Legacy did not

17  engage in "culpable" conduct because Legacy reasonably relied on the plain language of the

18  Court's Time Extension Order, the reasonableness of which is supported by Sorensen's

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27

28

701094861v1

– 8 –

1   own conduct indicating that Sorensen also considered the Court's Time Extension Order to

2   apply to Legacy; and (iii) Sorensen will not be prejudiced.

3

4   Dated: May 30, 2008

5                                 PILLSBURY WINTHROP SHAW PITTMAN LLP
                                        DAVID A. JAKOPIN

6                                 DANIEL J. RICHERT
                                 2475 Hanover Street

7                                 Palo Alto, CA 94304-1114

8                                 By _____/s/_Daniel J. Richert_____
                                       Daniel J. Richert

9                                 Attorneys for Defendants

10                               DIGITAL NETWORKS NORTH AMERICA, INC.
                               LEGACY SUPPORT SERVICES, LTD. d/b/a S2G

11

12   Of Counsel:

13   Bradley J. Hulbert  (admitted *pro hac vice*)
    Richard A. Machonkin  (admitted *pro hac vice*)

14   Kurt W. Rohde  (admitted *pro hac vice*)
    McDONNELL BOEHNEN HULBERT & BERGHOFF

15   300 South Wacker Drive
    Chicago, Illinois  60606

16   312-913-0001  Telephone
    312-913-0002  Facsimile

17   hulbert@mbhb.com

18   machonkin@mbhb.com
    rohdek@mbhb.com

19

20

21

22

23

24

25

26

27

28